## T. J. Belcher et al. v. A. E. Fox et al.

(Case No. 1542.)

1. Deeds — Forgery — Evidence.— The burden of proof, where the plea of *non est factum* brings in issue the forgery of certain deeds, being on the parties holding under such deeds, evidence as to the reputation of the subscribing witnesses does not of itself alone establish the genuineness of the deeds in question. The execution of such deeds being not sufficiently proved by such evidence alone, it is error to permit copies from the record, or even the originals, to be admitted in evidence. Holmes v. Coryell, 58 Tex., 685; Newby v. Haltaman, 43 Tex., 317, and other cases cited.

2. Same.— A deed between the same parties, which may be in every respect legal, but relating to land in no way connected with that in controversy, is inadmissible to prove up an instrument whose forgery is alleged.

3. Charge of the Court.— A charge as to outstanding title is erroneous, where there is no evidence as to that subject introduced.

4. Community property — Measure of value.— Where the land certificate is community property, which after the death of the mother is conveyed by the father, in the absence of some fact giving him power to convey, the children must be entitled to one-half of the land, less the value of such property as they have received from their father or his estate. The rule as

to the determination of the value of the community property, sold without authority by the surviving parent, is, that the property should be valued as at the time it is received from the surviving parent or his estate. Sparks v. Spence, 40 Tex., 702, cited and followed.

APPEAL from Navarro. Tried below before Jno. H. Rice, Esq., special judge.

Edward H. Belcher and his wife, Lydia M., acquired during their marriage a six hundred and forty acre headright certificate. During the life-time of Lydia M., two hundred and fifty acres of said certificate were sold or traded to John Belcher, but the deed appears not to have been made until long after the death of Mrs. Belcher. In 1841 Mrs. Belcher died, leaving three hundred and ninety acres of said certificate then on hand. The defendants below, appellees, claim through a chain of transfers from E. H. Belcher to J. W. Massie, from Massie to Wilson, from Wilson to Jordan, from Jordan to Hanks, from Hanks to Peak, and from Peak to defendants. The first of these transfers, to wit, from E. H. Belcher to J. W. Massie, bears date in 1849, several months subsequent to the death of Mrs. Belcher. These transfers were all impeached for forgery by a plea of *non est factum*. Appellants brought this suit to recover the land, claiming that they should recover the entire tract because the deed from their father to Massie was a forgery; or, if this deed was genuine, then they sought to recover the community interest of their mother.

*Frost, Barry & Lee*, for appellants, cited as to the evidence as to forgery: Cox v. Cock, 59 Tex., 521; Williams v. Conger, 49 Tex., 594; Gaines v. Cotton, 49 Tex., 118; Newby v. Haltaman, 43 Tex., 314; Stroud v. Springfield, 28 Tex., 649; Powell v. Haley, 28 Tex., 52; R. S., art. 2257; Hobby's Land Law, sec. 92; 1 Greenl. Ev., 558. As to value of community property: Sparks v. Spence, 40 Tex., 702.

No briefs for appellees on file.

STAYTON, ASSOCIATE JUSTICE.— The appellants claim the entire land upon the ground that the deed purporting to have been made by their father to J. W. Massie, through which the appellees claim, was never in fact executed by him; and they further claim, in the event that deed is genuine, that they are entitled to one-half of the land through inheritance from their mother, the certificate upon which the land was granted being community property, and the pur-

ported sale by their father having been made after their mother's death.

The plea of *non est factum*, filed by the appellants, put the burden of proving the execution of the several deeds named in it upon the appellees, and it becomes necessary to inquire whether the deeds were so proved as to justify the court in permitting them to go to the jury.

The land is situated in Navarro county.

The deed purporting to have been made by E. H. Belcher to Massie bears date July 13, 1849; that from Massie to Wilson bears date April 3, 1850; and that from Wilson to Jordan December 4, 1850.

The original deeds were not produced, affidavit of their loss having been made; by agreement the deeds were read from the record of deeds for Navarro county, subject to all legal objections which could be raised to the originals had they been produced.

These deeds were recorded in Navarro county in 1870; all had subscribing witnesses who are shown to be dead, and purport to have been proved for record by some of the witnesses as early as March 16, 1853, this being the date of the proof for record of the last deed named.

The land was patented to E. H. Belcher, the father of appellants, on September 22, 1862, and he died on October 26, 1865.

The deeds all purport to have been proved for record before James McWilliams, county clerk of Rusk county, or his deputy.

The only evidence offered by the appellees of the genuineness of the attacked deeds, if that be any evidence, was that the persons whose names appear as subscribing witnesses to the deeds, as well as the officers before whom they purport to have been proved for record, were dead, and that they were persons of good reputation, resident in Rusk county at the time the deeds bear date, as was also E. H. Belcher.

It further appears from the testimony of a witness that he located the land in controversy for F. M. Hanks, who claimed by a deed made to him by Jordan of date March 9, 1855, the execution of which was proved; but the records of the surveyor's office showed that the person who made the location made it for another person than Hanks. The location was made October 26, 1861.

From a certificate copied into the record of the paper purporting to be a deed from E. H. Belcher to Massie, it would appear that that deed was recorded in Rusk county on September 29, 1849, but there is no evidence whatever that the deed in fact was so recorded. Hanks conveyed to Peak December 7, 1864, but the deed was not re-

corded until May 20, 1870. Peak conveyed to the appellees in June, 1875.

The testimony of several witnesses seems to have been introduced without objection, which, it is admitted in the record, proved that the reputation of Hanks as a land dealer was bad.

The appellants objected to the admission of the deeds, the execution of which was denied, upon the ground that they were not sufficiently proved, and also moved to strike out the deeds after they had been read from the record, and the action of the court in admitting and retaining the deeds is assigned as error.

We are of the opinion that the assignments of error based upon those matters are well taken. There was certainly no such proof of the execution of the deeds as the law requires.

The original deeds were not produced, and strong must be the corroborating facts to authorize the holding that a deed even thirty years old is genuine when the original is not produced, and a copy from the record, or the record, is relied upon to show even the existence of the paper. Such proof, at best, is but secondary. When the deed itself is introduced, coming free from suspicion and from the proper custody, even then facts corroborative of its ancient existence and genuineness must be proved. Stroud v. Springfield, 28 Tex., 663; Newby v. Haltaman, 43 Tex., 317; 1 Greenleaf, 570; 1 Wharton's Evidence, 732, 733; Starkie on Evidence (9th ed.), 521; Holmes v. Coryell, 58 Tex., 685.

When acts are relied upon as corroborative, they should be such as are contemporaneous with the life of the person who is claimed to have executed the instrument, if he lived for many years after the apparent date of the instrument, if not nearly contemporaneous with the date of the instrument itself; be open in their nature, and such as evidence a clear claim of title consistent only with such an instrument as is claimed to have been made; the mere existence of the instrument is not enough. There was no such evidence in the case as showed with reasonable certainty that two of the deeds were ever executed; that two of the deeds recorded in Navarro county in 1870 had an existence long before the time they were there filed for record, nor that any claim to the land was ever openly made during the life of E. H. Belcher.

As the judgment will have to be reversed, comment will not be made upon the evidence; at another trial, with such additional evidence as may be offered, it may be proper to let the deeds go before a jury for their consideration.

The court permitted a deed made by Wilson to Jordan, and also a

deed from Jordan to Hanks for the Larkin gross survey situated in Henderson county, and in no way connected with the land in controversy, to be read in evidence, over the objection of appellants. This evidence was certainly irrelevant, and could have no legitimate bearing upon the issues involved in the case. There may have been transactions between Wilson and Jordan and between Jordan and Hanks, in reference to other lands, in all respects legal; but that this may have been so could not tend, in the remotest degree, to prove that the chain of transfer from E. H. Belcher down to Jordan, under which the appellees claim, was genuine. Its admission was calculated to induce the jury to believe that they might look to it for some purpose, and they may have been thereby misled.

There were no facts in the case which called for any charge of the court upon the question of outstanding title to the land in controversy in the estate of John Belcher, or its assigns, and such a charge should not have been given.

The whole theory of appellees' case is that their claim is based upon a conveyance from E. H. Belcher to Massie of a part of the Belcher certificate, and that this, in part, was located by Hanks on the land in controversy. There is no evidence tending to show that the land in controversy was located by John Belcher, or by some person for him, under that part of the certificate conveyed to him.

If the deed from E. H. Belcher to Massie was genuine, the certificate, being community property, and having been conveyed after the death of the mother of appellees, in the absence of some fact giving their father the power to convey it, they would be entitled to recover one-half of the land, less the value of such property as they had received from their father or from his estate.

The true rule as to time for determination of the value of property received from the surviving parent or from his estate, and for determining the value of community property sold by the surviving parent without authority, is that both should be valued as at the time the property is received from the surviving parent or his estate. Sparks v. Spence, 40 Tex., 702. The charge of the court in this respect was erroneous, and the charge asked by the appellants was substantially correct, except that it did not inform the jury at what time the land should be valued.

The other assignments of error relate to matters which will not probably arise upon another trial, and need not be considered.

For the errors indicated the judgment of the court below is reversed and the cause remanded.          REVERSED AND REMANDED.

[Opinion delivered December 14, 1883.]