KELLOGG et al. v. CHAPMAN. (No. 268.)

(Court of Civil Appeals of Texas. Beaumont. March 1, 1918. Rehearing Denied March 20, 1918.)

1. EVIDENCE ⬤═══372(6) — ANCIENT INSTRUMENTS.

As delivery and acceptance is essential, an ancient deed against which a plea of non est factum is interposed is not, without proof of execution, admissible in evidence or effective as a conveyance; it having been found among the papers in the county clerk's office, and no rights having been claimed or exercised thereunder until many years after its execution.

2. DEEDS ⬤═══53—EXECUTION—JURY QUESTION —SPECULATIVE ISSUES.

Where there was no evidence of the execution of an ancient deed offered against which a plea of non est factum was interposed, the question whether title passed should not be submitted to the jury as it would depend on speculation.

3. DEEDS ⬤═══193—ACTIONS—PLEA OF NON EST FACTUM.

Where a plea of non est factum is interposed as against a deed, the burden of establishing the execution as at common law is cast on the party relying on the deed.

4. DEEDS ⬤═══207—EXECUTION—EVIDENCE.

Execution of a deed against which a plea of non est factum is interposed is not established by proof that after the date of its alleged execution taxes were assessed against the grantee named, for such evidence is at best only hearsay and shows no claim of ownership or assertion of rights under the deed by the grantee.

5. EVIDENCE ⬤═══324(3) — HEARSAY — WHAT CONSTITUTES.

Evidence that after the purported execution of a deed the land was assessed against the grantee is hearsay.

6. EVIDENCE ⬤═══343(3) — COPIES — RECORDS —ADMISSIBILITY.

Where the original conveyance was not produced or accounted for, a certified copy of such deed as it appeared in the records is not admissible, particularly where the book containing the deed was shown to have contained copies of other instruments confessedly and admittedly forged.

7. EVIDENCE ⬤═══324(3)—REPUTATION—ADMISSIBILITY.

In an action involving title to land, testimony by a witness that it was generally understood in her family that the deed to her father, the original of which was not produced, was executed in payment of legal services was improperly admitted, where it did not appear that the witness' father ever asserted any claim to the land, but it was shown that the witness never saw any of her father's papers, and that she was too young when he died to understand anything of the matter.

Appeal from District Court, San Augustine County; W. R. Blackshear, Judge.

─────────────────────────────────────────────
⬤═══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Trespass to try title by Mrs. Rose Kellogg and others against J. R. Chapman. From a judgment for defendant, plaintiffs appeal. Reversed and rendered.

W. D. Gordon, of Beaumont, for appellants. Oliver J. Todd, of Beaumont, and Terry, Cavin & Mills, of Galveston, for appellee.

BROOKE, J. On the 15th day of August, 1915, appellants instituted suit of trespass to try title against appellee, the land involved being the A. G. Kellogg 1107-acre survey in San Augustine county. The defendant answered by a plea of general denial and not guilty. The case was submitted to the jury upon three special issues, as follows:

Question No. 1: "Did or did not A. G. Kellogg execute and deliver to William Coote, as a conveyance, the instrument purporting to be from Kellogg to Coote, and was it accepted by William Coote as a conveyance to him of the title to the land in controversy? If you find the affirmative of the issue, you will answer 'Yes.' If you find the negative of this issue, you will answer 'No.'"

To this question the jury answered "Yes."

Question No. 2: "Was or not the purported transfer from William Coote to Terry H. Cahal, purporting to convey to Terry H. Cahal all the right, title, and interest of Coote to the land in controversy, a genuine instrument of conveyance from William Coote mentioned in the Kellogg deed? If you answer this in the affirmative, the form of your answer may be 'Yes.' If you answer in the negative, the form of your answer may be 'No.'"

To this question the jury answered "Yes."

Question No. 3: "Did or did not William Coote, prior to the 28th of February, 1838, rescind the deed from Kellogg to himself or retransfer to Kellogg, or his estate, the land in controversy? If you determine this in the affirmative, let your answer be 'Yes.' If you determine this in the negative, let your answer be 'No.'"

To this question the jury answered "No."

Judgment was rendered on January 3, 1917, against the plaintiffs in favor of defendant Chapman for the land in controversy. Motion for new trial was filed and overruled, and notice of appeal given, and appeal duly perfected.

It appears from the record that Kellogg, the original grantee, was a single man, and was killed by the Indians in the year 1839; that Kellogg was an immigrant to Texas, and at his death his estate was administered on in Texas by his brother, Ebenezer Kellogg. Ebenezer died in 1840, and K. L. Anderson became his administrator. It further appears that A. G. Kellogg had been a merchant in San Augustine from the year 1835 down to his death, and dealt extensively in lands as well as merchandise. After the death of A. G. Kellogg, one A. Horton, custom collector of the republic of Texas, obtained a judgment against K. L. Anderson, administrator of the estate of A. G. Kellogg, Matthew Cartwright, and L. E. Griffith, rendered at the March term of the court in 1840. On the 2d day of November, 1841, there was issued an original execution on the judgment, and the writ on this shows that A. G. Kellogg's headright was pointed out as his property, and levied upon to satisfy the judgment. A deed was made by William Kimbrough, sheriff, to M. Cartwright, dated July, 1842. Matthew Cartwright conveyed 100 acres of this headright on the 19th of December, 1858, to Josiah Parker. Matthew Cartwright died about the year 1870. On the 30th of May, 1871, a partition of his lands among his children was had, and the land in controversy was set aside to his son, Leonidas Cartwright. Leonidas Cartwright conveyed 100 acres of land to H. L. Lucas in 1899, 100 acres to D. C. Odom in 1899, and on the 2d day of October, 1905, he conveyed the remainder of the tract to H. P. Weir for a consideration of $2,000, and H. P. Weir, on October 16, 1905, executed a deed thereto to Marrs McLean to secure a note due by Weir to W. D. Gordon for $2,000, due 12 months after date. On the 18th of October, 1906, Weir executed a deed to Gordon transferring the said land, reciting that it was in full settlement of the indebtedness of said Weir recited in the deed of trust. On the 5th day of January, 1907, Gordon and Weir executed a deed to Wm. L. Pearson conveying the said land, except the 300-acre tract as above set out. This record also reflects the fact that, from 1846 down to Leonidas Cartwright's sale of the land to Weir in 1905, the land was assessed for taxes to M. Cartwright in his lifetime, and after his death to his son, Leonidas Cartwright, and parties claiming under them. It is further shown by the record that Kellogg and Coote were partners in the mercantile business in 1835; that from 1836 to 1838 Kellogg was running the business alone, and Coote does not appear to have had any interest in the same. It is also shown that in 1835 Coote had a wife and two boys, as shown by the application he made for a grant in Texas on January 24, 1835.

On the part of defendant, Chapman, there was offered in evidence the county clerk of San Augustine county, and he testified that there is in his custody an original deed among papers commonly designated as the archives, dated January 3, 1836, purporting to be executed by A. G. Kellogg before John G. Love, and witnessed by David Brown and Samuel Stivers. This original instrument was then read in evidence, and purported to be a conveyance of the Kellogg headright by Kellogg to Wm. Coote for a consideration of $200. There was also offered in evidence a certified copy of the same instrument.

Objections were made as follows by the plaintiffs: That there was no proof adduced that the grantee in that instrument ever accepted the deed or claimed that land, because it does not appear to come from the custody of the grantee, nor was it a filed paper, whereby constructive delivery of the paper might be inferred; objection was further made to the introduction of said in-

strument until there was evidence tending to show that the grantee in that instrument so accepted under it by receiving it or by claiming the property under it, because the instrument does not come from the proper custody, in that it was a private deed left or found among the papers in the county clerk's office without ever having been filed for record with the county clerk, and without ever having been recorded.

Objection was made to the certified copy of the instrument: (1) Because, as a certified copy, it is not authenticated so as to make it admissible in evidence under the registration laws of this state, in that the instrument purports to be authenticated by a man named Lakey, who is not a witness to the deed, before Charles Epps as county clerk of said county, and the certificate of authentication is not in form of law as required by the statute; (2) because under what is known as the Townsend Curative Act, which provides that where an instrument has been actually recorded for a period of 10 years it should be admissible in evidence, whether properly acknowledged or not, it is provided that that can only be where there has been no adverse claim asserted to that instrument during that period of 10 years next after it was registered, and there is no proof adduced here that would fulfill the condition which made a condition precedent to the introduction of such an instrument under that act; (3) because there is an affidavit of forgery filed to this instrument, which requires the proof of this instrument as at common law, and there has been no proof tending to establish the genuineness and existence of this instrument other than the certified copy now offered; (4) no predicate has been laid for the introduction of secondary evidence of the claimed deed.

[1, 2] The first assignment of error is as follows:

"The verdict of the jury on special issue No. 1 is contrary to the evidence and without support, in this, that there is no evidence that William Coote ever received said deed made out to him by Kellogg, or ever acted thereon or claimed the land thereunder, and therefore said finding is without the precedent of sufficient evidence to sustain it."

Under this assignment are submitted two propositions, to wit:

"(a) In the face of the plea of non est factum, there is no basis in the evidence for the finding of the jury that Kellogg executed and delivered to William Coote as a conveyance an instrument purporting to be from Kellogg to Coote, and that William Coote accepted such conveyance and became the owner thereby of the land in controversy.

"(b) Where the evidence is without dispute, as in this case, and fails to establish the execution and delivery of the deed from Kellogg to Coote, it was error to submit that issue to the jury and allow them to surmise and speculate upon the probability of the land being conveyed by Kellogg and accepted as such by Coote."

On the contrary it is urged:

"(a) The archive from Kellogg to Coote was an original instrument, retained in the records of the officer before whom it was executed in compliance with the civil law more than 80 years before, and of itself proved title into William Coote.

"(b) The certified copy of the archive from Kellogg to Coote was admissible to the record, and having been duly recorded in the year 1845, the record thereof is an ancient record and in itself proved the conveyance and its invalidity not having been affirmatively established did, in itself, place the title in William Coote."

It will be seen that it is contended that a private deed of conveyance found with the clerk, but never recorded there, under which no title has ever been asserted by the grantee therein, must be shown to have been delivered to the grantee and accepted by him before title can be said to pass thereby, and the cases of Turberville v. Fowler, 101 Tenn. 88, 46 S. W. 577, Culmore v. Genove, 24 S. W. 83, Koppelmann v. Koppelmann, 57 S. W. 83, and Tuttle v. Turner, 28 Tex. 773, are cited as the authorities for the contention.

The court in Tuttle v. Turner, supra, 28 Tex. on page 773, uses the following language:

"A deed takes effect only from the date of its delivery, which may be either actual or constructive. It is essential to the operative force and validity of the deed, if not actually delivered to the grantee or his agent authorized to receive it, to prove notice to him of its execution, and such additional circumstances as will afford a reasonable presumption of his acceptance of it. The presumption that a party will accept a deed because it is beneficial to him, it is said, will never be carried so far as to consider him as having accepted it. * * * But possession of a deed by the grantee raises a presumption of its delivery. * * * This presumption may be rebutted by proof to the contrary."

In our opinion, the Supreme Court has announced a correct legal proposition. The record in this case neither shows nor indicates in any manner that the instrument was either known to or accepted by Coote as a conveyance. The delivery of a deed to a grantee is part of the conveyance of the title. In this case, the document was found among the papers in the county clerk's office, where it was neither filed for record nor recorded. Perhaps the presumption would be, if the deed was filed for record, that a delivery was had to the grantee, but with this admission it may be shown that the grantee never claimed any benefit thereunder, especially when it is attacked by a plea of non est factum. This record is silent as to the alleged fact, or the claimed fact, or the fact which is shown to be presumed in the case, that William Coote ever claimed any title under this deed of conveyance. On the contrary, the proof is plain and undisputed that the Kellogg headright of land was levied upon and sold in 1842 as the property of Kellogg, and bought by Matthew Cartwright, and that this was the only claim to the land, at least actively, until in the year 1905 a deed was had from Mrs. Osborne and Miss Cahal setting up claim to the land under the alleged conveyance from Kellogg to Coote.

To our minds, when a deed or conveyance,

whether an ancient instrument or whether recently executed, has a plea of non est factum interposed against it, the burden of establishing it as a conveyance of title is not made out simply by the introduction of the instrument in evidence without proof of its execution, and without proof that it was ever acted upon by the grantee therein, and the burden of proof, before the instrument should be admitted in evidence, is upon the party offering and claiming under the instrument in question. Harris v. Hoskins, 2 Tex. Civ. App. 486, 22 S. W. 251; Cairel v. Higgs, 1 Posey Unrep. Cas. 66; 1 Wharton on Evidence, §§ 726, 1359; Belcher v. Fox, 60 Tex. 529; Holmes v. Coryell, 58 Tex. 685.

The case of Harris v. Hoskins, supra, reading from the syllabus, uses the following language:

"An ancient document transferring a headright certificate, free from suspicion, and over 30 years old, found in the county clerk's office, in an old package of deeds, should be admitted in evidence, when accompanied with an offer to prove the genuineness of the signature of one of the attesting witnesses, though the office of the clerk of the court is not the proper depository for such documents."

So, in our opinion, the first proposition of appellants, under the first assignment, should be sustained; and, with reference to the second proposition, we are of opinion, also, that the evidence, as shown by this record, fails to establish the execution and delivery of the deed from Kellogg to Coote, and that it was error to submit that alleged issue to the jury, thereby permitting them to surmise and speculate upon the probability of the land being conveyed by Kellogg and accepted by Coote. Therefore we conclude that the assignment must necessarily be sustained, for we are persuaded to believe that the ancientness of the instrument did not, of itself, prove title in William Coote, nor that the record of the same is an ancient record and in itself proof of the conveyance; neither was the burden of proof upon appellants to establish the validity of the instrument, nor did this record, in itself, place the title in William Coote. Joske v. Irvine, 91 Tex. 582, 44 S. W. 1059, and cases cited.

[3-5] The second assignment of error is as follows:

"The verdict of the jury on special issue No. 2 is contrary to the law and the evidence, and without support in either, in this, the instrument introduced in evidence as to which said special issue No. 2 is a finding was not proved by any competent evidence to have ever been executed, delivered, accepted, and acted upon by the putative grantee there' nor was the same proved as a matter of fact as the act and deed which it purports to be under the rules of the common law or otherwise."

There are two propositions under this assignment, as follows:

"(a) When the plea of non est factum was filed against the purported transfer from William Coote to Terry H. Cahal, the burden was thereby placed upon the defendant Chapman to establish the execution of the alleged transfer as at common law, and this the defendant failed to do.

"(b) The only evidence offered in support of the purported deed from Coote to Cahal, attacked as a forgery, was the assessment for three years in the name of T. H. Cahal, without any showing as to why the land was assessed to Cahal, and without any showing that Cahal ever paid the taxes or knew that the land had ever been assessed to him; and this was not sufficient as a matter of law to establish the genuineness and validity of the deed, against a plea of non est factum. It would not be sufficient even in the absence of such a plea."

In our opinion, without going into the matter extensively, it is sufficient to say that, when a plea of non est factum was filed against the purported transfer from William Coote to Terry H. Cahal, the burden was thereby placed upon the defendant Chapman to establish the execution of the alleged transfer as at common law, and the record shows that under the second proposition offered under the second assignment of error by the appellants, as a matter of fact, there was neither claim of any kind nor any showing as to why the land was assessed to Cahal. There was no showing at all, as reflected by this record, that Cahal ever paid the taxes, or knew that the land had been assessed to him, or that he claimed to own it. Outside of this, testimony should not have been received by the lower court, and was clearly, as shown by the decision of the Supreme Court, hearsay, and not admissible in evidence in this case.

The fact that the land was assessed in the name of T. H. Cahal for three years, not being coupled with any fact which shows a claim of ownership or a payment of any taxes at any time, or a knowledge on the part of the alleged owner that he at any time knew there was a transfer to him, and without any circumstance, so far as the record is concerned, showing that Cahal had any knowledge that the land was so assessed in his name; there was only the isolated fact in this record; that is to say, the fact of the admitted testimony of Mrs. Osborne and Miss Cahal about what they had heard, nothing being specific, the information being perhaps not from the alleged owner, at least not shown to have been made by him, that there was any connection with the land in controversy. This fact alone, in the entire record, connects or is indicative of the fact that Cahal ever heard of the land in controversy or had any connection therewith.

We believe that as to the burden of proof there can be no question, under the decisions of this state, and cite the cases of Belcher v. Fox, 60 Tex. 530; Holmes v. Coryell, 58 Tex. 685; Wilson v. Simpson, 80 Tex. 283, 16 S. W. 40; West v. Houston Oil Co., 56 Tex. Civ. App. 341, 120 S. W. 230; 1 Wharton, Ev. § 732; Greenl. Ev. §§ 570, 575B, par. 3, p. 720, also paragraph 4, p. 721; Schultz v. Tonty Lumber Co., 36 Tex. Civ. App. 448, 82 S. W. 353. The assignment therefore must be sustained.

The third assignment of error is as follows:

"The finding as to issue No. 3 is without support in the evidence, in this, that all the facts and circumstances in evidence show that there was no claim made to the land by William Coote contemporaneous with and subsequent to the period therein mentioned, but all the evidence shows that the only claim asserted was by Albert G. Kellogg's estate and those claiming thereunder."

From what has been said heretofore, this assignment must be sustained.

The fourth assignment of error is as follows:

"The court erred in granting the defendant's motion for judgment based upon the findings of the jury and the evidence in the record because, as a matter of law, the defendant is not entitled to such judgment, and it has no sufficient support in the evidence or predicate upon the issues found."

With reference to said assignment, it is sufficient to say that in our opinion the defendant was not entitled to such judgment, and that no sufficient support is found in the evidence.

[6] The fifth assignment of error is as follows:

"The court erred in admitting in evidence the document spread upon Book F, at pages 451 to 452, of the Deed Records of San Augustine county, purporting to be a copy of the alleged deed from Kellogg to Coote and the transfer thereon from Coote to Cahal, in this, there were no facts and circumstances sufficient in law accompanying the production of said instrument to justify the prima facie case required to be made in view of the plea of non est factum as a condition precedent to its admission in evidence. On the contrary, the facts and circumstances affirmatively showed the instrument (1) not to be free from suspicion; (2) not to come from proper custody; and (3) not to be genuine."

It is sufficient to say, upon the authority of Belcher v. Fox, supra, which was reversed by the Supreme Court, because deeds were admitted in evidence without the precedent conditions of showing corroboration of the ancient existence and genuineness thereof, and claim thereunder by the parties immediately concerned, and the court, in its opinion, used the following language:

"The original deeds were not produced, and strong must be the corroborating facts to authorize the holding that a deed even 30 years old is genuine when the original is not produced, and a copy from the record, or the record [itself] is relied upon to show even the existence of the paper. Such proof, at best, is but secondary. When the deed itself is introduced, coming free from suspicion and from proper custody, even then facts corroborative of its ancient existence and genuineness must be proved."

In the instant case the original was not produced or even accounted for, except the record shows that perhaps Cahal's papers had been burned. It was never shown that Coote was at any time in Tennessee. In fact, the record shows that he was not. No fact or circumstance which even attempts to bring out the fact that Cahal ever knew or ever heard of Coote, but rather it is shown by this record that Coote left this country and was living in Ireland at the time this deed purports to have been executed in 1838; the deed purporting to have been made in Tennessee. It is not shown by this record that there were any such witnesses living in Tennessee such as purport to be signers of that paper. It did not purport to be proven by either of the witnesses, as required by law. The prerequisites, therefore, by the decisions of this state, were lacking when the paper was introduced in evidence. The only evidence in this record which shows any such paper ever existed is furnished by the Chas. Epps copy in the same book with other copies of instruments confessedly and admittedly forged by Epps.

This assignment must also be sustained.

The sixth assignment of error is submitted as a proposition, as follows:

"The court erred in admitting in evidence, against the plea of non est factum, the reputed deed from Albert G. Kellogg to William Coote, because it was unaccompanied by any facts and circumstances sufficient in law to establish it as a conveyance of the land by Kellogg and an acceptance thereunder by Coote."

From what has been heretofore said, the assignment is sustained.

[7] The seventh assignment of error is also presented as a proposition, as follows:

"The court erred, as will more fully appear from the bill of exception taken thereto, in overruling the plaintiff's objection and admitting in evidence the assertions made in the deposition of Marh Cahal Osborne to the substantial effect that it was generally understood in her family that the alleged deed to Terry H. Cahal had been made upon consideration of a fee to her father for legal services; to all of which evidence of this nature and kind seasonable objections were interposed and exceptions taken, more fully shown by said bill."

The question propounded to Marh Cahal Osborne was as to whether there was any tradition in her family as to the ownership of 1,107 acres constituting the Kellogg survey; if there was such tradition, from whom she understood said land to be obtained by her father. Objection was made to this question as follows: As calling for hearsay and opinion, and as being incompetent to prove any issue in the case; and, further, because this witness, in answering the same interrogatory, in the first sentence says that she was too young when her father died, and did not know anything about his business or legal papers, and in the next place the tradition or knowledge asked about is entirely an opinion of the witness.

This testimony was offered as evidence of the claim of title to these people. Further objection was that in another portion of her deposition it appears that she never asserted any claim until she gave a quitclaim deed to the people they are holding under for $400 five or six years ago, and that was the only claim she ever asserted to the property.

The witness was permitted to testify that there was the information and knowledge in her family that her father owned the body of land in Texas inquired about in this interrogatory; it was talked of and discussed in

the family; that it was always understood that her father was deeded the land in payment of a fee for his services in representing the party deeding him the land; that she never saw any of the papers of her father, land titles or otherwise, for any years; that she was too young when he died to know about business or legal papers.

Without undertaking to consider the various decisions of the Supreme Court and other courts of this state, it is sufficient to say that in our judgment the testimony sought .to have been eliminated, and which was introduced in evidence, and which most probably brought about the verdict of the jury upon which judgment was rendered in the case, was clearly hearsay, not admissible, and should have been excluded from the consideration of the jury. Therefore the assignment must be sustained.

From what has been said, therefore, it is impossible for this court to arrive at any other conclusion except that, not only must this judgment be reversed, but that the judgment must be rendered in favor of appellants.

There seems to be in our good state a desire on the part of the bench and bar that in the consideration of cases in the appellate court extensive opinions should not be handed down, but that briefness should by the appellate courts be considered, among other things, of prime importance in the consideration of the cases submitted. Many nice questions, therefore, which might have been interesting and perhaps somewhat instructive, have, in obedience or in conformity to the aforesaid demand, been eliminated, and this opinion has been made as brief as possible.

Therefore it is ordered that this case be reversed and the cause rendered in favor of appellants.