## WARD v. WEAVER. (No. 9294.)

Court of Civil Appeals of Texas. Galveston.
June 5, 1929.

Rehearing Denied June 27, 1929.

R. H. Ward and Gordon O. McGehee, both of Houston, for appellant.

Harry Holmes and R. Wayne Lawler, both of Houston, for appellee.

LANE, J. This suit was instituted by Mrs. Mary Weaver on July 18, 1927, against Mrs. Ward, in the form of trespass to try title to lot 8, block 6, of the Texas Savings & Real Estate Investment Association's Second addition to the city of Houston, less 12½ by 25 feet in the northern corner of said lot, and lot 10 in block 70 of the Port Houston addition to said city.

Mrs. Ward filed her original answer on the 21st day of July, 1927, consisting of a general denial and plea of not guilty, and on the 23d day of March, 1928, she filed her first amended original answer and cross-action in trespass to try title to the lots involved against Mrs. Weaver, and therein reiterated her plea of not guilty and prayed for possession of the lots and for rentals.

On the 15th day of May, 1928, Mrs. Weaver filed her first supplemental plea answering the cross-action of Mrs. Ward, wherein she disclaimed all right, title, and interest in and to lot 10, block 70, above described, except her right to a lien thereon for the repayment of money she had expended in paying the taxes due on the same, and, as to the allegations of Mrs. Ward relative to the other lot above described, Mrs. Weaver pleaded general denial, plea of not guilty, the three, five, and ten years' statutes of limitation, and a plea of non est factum to a certain deed purported to have been executed by her and her husband as grantors to Mrs. Ward as grantee of date December 29, 1917. She alleged that on the 29th day of December, 1917, and for a long time prior and subsequent thereto, William Weaver and she were husband and wife, that her husband was the head of a family, and that their family at all times during the period mentioned occupied the premises as their homestead.

In the alternative, she alleged that she had paid large sums of money in discharge of certain vendor's lien notes resting against said lot, executed by Mrs. Ward, and had paid about $850 in discharging the taxes due on the property, that she and her husband had made valuable improvements on the lot in good faith; and she prayed that, if it should be determined that she was not the owner of

the property, she be allowed a recovery against Mrs. Ward for such sums paid out by her and for the establishment of a lien against the property to secure payment of such sums.

On May 21, 1928, Mrs. Ward filed her supplemental answer and cross-action containing a general denial, alleging the rental value of the property to be $70 per month, a total of $7,500, and praying for a recovery thereof from Mrs. Weaver, who she alleged was her tenant, and praying that, if Mrs. Weaver recovered any sum for payment of purchase-money notes and taxes, such sum be offset against said sum due by her for rent.

On May 21, 1928, Mrs. Weaver dismissed her original suit without prejudice to her plea of not guilty and her answer to the cross-action of Mrs. Ward.

### Facts.

On the 15th day of July, 1913, J. G. Boyd, by his deed of that date, conveyed to Mrs. Ward lot 8, block 6, hereinbefore described, which is the lot the title to which is in controversy here. The total consideration recited in such conveyance is $4,250, of which $1,-650 was recited as being in cash and the balance evidenced by four notes, each for the sum of $650, due one, two, three, and four years from date, executed by Mrs. Ward to Boyd, bearing 7 per-cent. per annum interest, payable annually; a vendor's lien being retained in the deed to secure the unpaid purchase money. Mrs. Ward, as additional security, also executed and delivered to E. I. Kendrick, trustee, to secure Boyd in the payment of the notes, a deed of trust on the lot. J. G. Boyd died, and his widow, Jessie S. Boyd, became the owner of the above-mentioned notes. As Mrs. Ward was unable to pay the notes as they became due, the dates of payment were extended, respectively, to July 15, 1918, 1919, 1920, and 1921, Mrs. Ward agreeing to increase the rate of interest to 8 per cent.

On the 1st day of October, 1917, by a deed of that date, Mrs. Ward, for a recited consideration of $250 cash and other good and sufficient considerations, conveyed the lot in controversy to Mrs. Mary Weaver.

Only $100 had been paid on the principal of the four notes, aggregating in amount $2,-600 on June 4, 1919. Thereafter Mrs. Weaver sent Mrs. Ward $250, which was paid on these notes, reducing the amount due upon them to $2,250. Mrs. Weaver and husband paid the annual interest on the notes as it accrued.

On the 20th day of August, 1920, some of the vendor's lien notes hereinbefore mentioned having become past due, Mrs. Mary Weaver, joined by her husband, on the one part, and Mrs. Jessie Boyd on the other part, entered into a written agreement whereby the due dates of the notes were extended.

On the 9th day of December, 1920, Mrs. Weaver and husband executed to William Anderson, trustee, for the use of Mrs. Jessie Boyd, a deed of trust upon the lot in controversy to secure payment of the balance due on the four vendor's lien notes executed by Mrs. Ward.

On the 10th day of December, 1920, Mrs. Jessie Boyd assigned to James Sinclair the vendor's lien notes and the lien and superior title held by her to secure said notes.

On the 19th day of May, 1928, James Sinclair executed and delivered to Mrs. Weaver an instrument wherein it is recited that the four notes executed by Mrs. Ward had been fully paid by Mrs. Weaver. It recited the transfer from Mrs. Jessie Boyd to James Sinclair, above mentioned, and that, in consideration of the payment of said notes, James Sinclair sells and conveys to Mrs. Mary Weaver, as her own separate property and estate, the vendor's lien and superior title to the lot in controversy theretofore held by Sinclair.

From the time of the purchase of the property from Boyd in 1913 to the date of the trial of this cause, Mrs. Weaver and her family had occupied the house situated upon the lot as their home, and Mrs. Weaver and her husband during all of such period were claiming the property as their own; they had the house insured, and paid for such insurance.

Mr. Joe Vetrano, the insurance agent, testified that, at the time the Weavers moved into the house, it was just a shack, and that he estimated that Mr. Weaver spent about $2,-000 in changing the cottage to a duplex.

Mrs. Weaver testified that Mrs. Ward had negotiated a sale of certain property that she and her husband owned, and took possession of about $800 in cash paid to her by the purchaser of said property, as part consideration, and also had such purchaser to convey to her two lots taken as part of the consideration for the property; that Mrs. Ward never paid her any part of the $800, nor conveyed to her the lots mentioned; that she thought Mrs. Ward had J. G. Boyd to convey the lot involved in this suit to her, and that, as soon as she learned that Mrs. Ward had Boyd to convey it to her (Mrs. Ward), she had Mrs. Ward convey it to her, which she did as shown by the deed of date October 1, 1917; that she paid the taxes on the place, amounting to something more than $900.

As already stated, it was shown that the Weavers paid the interest on the four Ward notes, that they paid $250 on them so as to reduce the sum to the amount of $2,250, and that thereafter Mrs. Weaver paid the balance due evidenced on the notes, and procured from the holder of such notes an acknowledgment of such payment and release of the lien existing to secure their payment.

Mrs. Ward introduced in evidence a deed in form purporting to have been executed by

Mrs. Weaver and her husband of date December 29, 1917, purporting to convey to Mrs. Ward the lot involved in this suit. The certificate of acknowledgment attached to this deed is made by J. W. Oliver, a notary public. It declares that Mr. and Mrs. Weaver personally appeared before him and declared that they had signed the deed, and was otherwise in legal form.

As already shown, Mrs. Weaver alleged under oath that neither she nor her husband "signed or executed" the deed.

Mrs. Ward bases her right to recover upon a showing that this deed was executed by Mr. and Mrs. Weaver, and both she and Oliver testified that Mr. and Mrs. Weaver did appear before Oliver, and in manner and form as required by law sign and acknowledge the deed, with the exception that Oliver testified that he did not read or explain the deed to Mrs. Weaver, because she stated to him that she had read it and knew what it was.

Mrs. Weaver testified that she was the half-sister of Mrs. Ward; that Mrs. Ward executed and delivered to her the deed of date October 1, 1917, conveying to her the property in question; that, when Mrs. Ward came to Houston in December, 1917, she was selling oil stock, and sold five shares of the stock of the Tartar Oil Company to her husband at $50 per share; that, after her husband bought this oil stock, Mrs. Ward wanted to exchange it for stock in the Diamond Oil Company; that she stated that the Diamond Oil Company would take over the stock, and then Mrs. Ward transferred such stock to the Diamond Oil Company. Continuing, she testified as follows:

"Then about in the last of 1917 she came to our place one morning and said that the Franklin Oil Company of New York would take it over, and they were on the curb, that the oil company was on the curb and that they had producing wells and that we would get our money out of it. So she had my husband and myself to sign over our oil stock to the Franklin Oil Company, and that was in 1917; she requested my husband and I to sign those stock certificates. I have had no other transaction with Mrs. Ward about it excepting the transfer of that stock. Mrs. Ward did not request me to execute a deed to her for my property out there. I do know Mr. Oliver who was on the witness stand. Mr. Oliver never has in his life been in my house and I have never acknowledged any deed for my home before Mr. Oliver. The signature to the instrument that you show me looks very much like my signature but the one doesn't seem to look like Mr. Weaver's. I did not sign a deed. I must have signed that paper. I never knowingly signed a deed to my home to anybody. This looks like my signature on this paper, but if it is a deed I surely didn't sign it because I didn't sign any deed to that property. I do know my signature and this does look like my signature on it, and I must have signed it because it looks like my signature. If I did sign it, I did not know what I was signing. This deed, the paper you have been showing me now, purports to have been made in 1917."

The deed purporting to be a conveyance of the property involved by Mr. and Mrs. Weaver, though purporting to have been executed on December 29, 1917, less than three months after Mrs. Ward had conveyed the property to Mrs. Weaver, was not filed for record until the latter part of May, 1927, almost ten years after its purported execution.

Mrs. Weaver testified that the first time she heard of the purported deed was about a month after it had been filed for record; that from the time she moved upon the property she had never heard Mrs. Ward assert any interest in the property until this suit was filed.

Upon the pleadings of the parties and upon the facts and circumstances shown, the court submitted to the jury the following issue:

"Do you find that the cross-defendant, Mrs. Mary Weaver, appeared before J. W. Oliver, a notary public, for the purpose of having him take her privy acknowledgment to the deed from herself and her husband to Franceline Ida Ward, which deed has been introduced in evidence before you?

"You will answer 'She did,' or 'She did not,' as you find the facts to be."

To the issue so submitted, the jury answered: "She did not."

Upon the verdict of the jury and the pleadings and evidence, the court rendered judgment decreeing that Mrs. Ward take nothing by her cross-action as to lot 8 in block 6, fully described in the plaintiff's petition, and that, upon the disclaimer of Mrs. Weaver as to lot 10 in block 70 of Port Houston addition, Mrs. Ward shall have and recover of Mrs. Weaver title and possession of the same. Mrs. Ward has appealed.

Appellant's contentions for a reversal of the judgment are (1) that the court erred in submitting the issue submitted, because appellee, Mrs. Weaver, admitted that she and her husband, William Weaver, signed the deed dated December 29, 1917, and there were no pleadings authorizing the submission of the question as to whether or not Mrs. Weaver appeared before a notary public for the purpose of having her acknowledgment taken, and there was no evidence to authorize such submission; (2) the answer of the jury to the issue submitted was not supported by any evidence, consequently the judgment predicated on such answer is erroneous, in that the same has neither pleadings nor evidence to support it; and (3) that the court erred in submitting such issue, because it was not a question as to whether or not Mrs. Weaver appeared before the notary public for the purpose of having him take her acknowledgment,

but the material question was whether she signed the deed and acknowledged it before the notary public.

We overrule the first and second contentions.

We think the evidence would amply support a finding that the whole of the consideration passed to J. G. Boyd for his conveyance of the property in controversy to Mrs. Ward was paid by Mrs. Ward with funds and properties belonging to the Weavers, and that by such conveyance Mrs. Ward held the title to the same in trust for the Weavers until October 1, 1927, at which time she conveyed the legal title thereto to Mrs. Weaver. Such was the status of the title, and, since Mrs. Weaver and her family occupied the property as their home, the purported deed from Mr. and Mrs. Weaver to Mrs. Ward, of date December 29, 1927, did not pass title unless the same was executed in manner and form as required by law; that is, unless it was signed by both Mr. and Mrs. Weaver and duly acknowledged by them in manner and form as required by law.

■ As already stated, Mrs. Weaver averred under oath that the deed dated December 29, 1917, was not *signed or executed by her, or by any person authorized by her to execute it for her*, that it was made without her knowledge or consent, and that she had never ratified the making of the same.

We think such plea was sufficient to authorize the admission of evidence as to whether or not Mrs. Weaver executed the deed.

■ It is well settled that a plea of non est factum denying under oath the execution of an instrument places the burden of proof on the party claiming under such instrument to prove its execution. Cox v. Cock, 59 Tex. 524; Kellogg v. Chapman (Tex. Civ. App.) 201 S. W. 1096; Crosby v. Ardoin (Tex. Civ. App.) 145 S. W. 709, and authorities there cited; Thompson v. Johnson, 24 Tex. Civ. App. 246, 58 S. W. 1030.

In Murphy v. Reynaud, 2 Tex. Civ. App. 470, 21 S. W. 991, the question was raised as to whether or not a deed was signed and acknowledged by Mrs. Murphy and her former husband, M. J. Massie. Mrs. Murphy was plaintiff, suing to recover title to and possession of certain property to which the defendants were claiming title under a deed purporting to have been executed by Mrs. Murphy and her former husband. Mrs. Murphy denied under oath that she had ever *signed or in any manner executed* such deed. In that case the court said: "We do not perceive that the petition restricts its denial to the fact that appellant had signed the deed. The statement is that she had not signed, or in any manner executed, it. The acknowledgment by a married woman is an essential part of her execution of a deed, and the language used in the pleading is broad enough to include a denial of such acknowledgments.

Besides, we do not understand that this rule would be as the court below held it, even if the petition denied only the signing of the deed. The pleader is not there setting out specially his own title, but is attacking that of his adversary, by the allegation of a fact which he evidently supposed must be supported by affidavit, and therefore must be specially pleaded. This opinion may have been erroneous, but it is, nevertheless, true that there is no purpose shown to restrict the issues to the question of the genuineness of the signature to the deed. The rule which confines a plaintiff in this action to proof of a title specially pleaded has no application. The charge of the court was therefore erroneous wherein it confined plaintiff to the issue of forgery. The deed, even if genuine, was ineffectual to pass title to the homestead, and appellant would have been entitled to recover if defeated on no other ground."

It is made to appear from the record in this case that appellant recognized the rule stated, and assumed the affirmation and offered evidence for the purpose of showing the proper execution of the deed, under which she claims, as a condition precedent to its admission in evidence.

■ We sustain appellee's objection to the consideration of appellant's third contention. The cause was tried before a jury. No objection of any kind or character was made to the submission of issue No. 1 to the jury before the same was submitted or at any time until on appeal. If the charge was erroneously worded and was objectionable to appellant, she should in some way have called the trial court's attention to such error so that it might have been corrected.

By article 2185, Revised Statutes of 1925, it is provided: "The charge shall be in writing, signed by the judge, filed with the clerk, and shall be a part of the record of the cause. It shall be prepared after the evidence has been concluded and shall be submitted to the respective parties or their attorneys for inspection, and a reasonable time given them in which to examine and present objections thereto, which objections shall in every instance be presented to the court before the charge is read to the jury, and all objections not so made and presented shall be considered as waived."

See Rule 24 for Courts of Civil Appeals.

If, however, we should consider the contention on its merits, we would overrule it. We think the complaint made of the submission of the issue is hypercritical. Any juror of ordinary intelligence, under the facts before them, could only understand that the inquiry was as to whether Mrs. Weaver acknowledged the deed before J. W. Oliver. Oliver testified that Mrs. Weaver did appear before him and sign the deed and acknowledge it, and Mrs. Weaver, on the contrary, testified she did not appear before Oliver on

the occasion and for the purpose testified to by him, and that she did not acknowledge the deed.

We now return to the question as to whether we should consider appellants' complaint of issue No. 1 submitted by the court.

In Robertson v. Vernon (Tex. Com. App.) 12 S.W.(2d) 991, it was held that, where no objections were made in the trial court to the manner in which issues relating to acknowledgment of an instrument involved were submitted, objections made for the first time in the appellate court under the provisions of article 2185, Revised Statutes 1925, should not be considered.

For the reasons above expressed, the judgment is affirmed.

Affirmed.