Opinion delivered March 22, 1887.

---

No. 2238.

D. T. SMITH ET AL. *v.* M. J. McELYEA ET AL.

1. LIMITATION—TRUSTS.—Though a deed be absolute, with clause of general warranty, if executed with a trust not apparent on its face, that the vendee will hold the title for the benefit of himself and others, and the vendor, by his acts and declarations, induces the *cestuis que trust* for a period of time to believe that he will in good faith execute the trust, no limitation will run during such period. The same protection against limitation exists, though the vendee has conveyed the land by similar warranty to others, who in like manner induced the *cestui que trust* to believe they would respect and execute the trust; and this though the second vendees be purchasers for value.

2. EVIDENCE—TRUSTS.—When the original vendee under a deed claimed by a *cestui que trust* to have been made upon a trust enuring to his benefit, was permitted to show in evidence the declarations of the grantor, uttered several days before the deed was executed, and for the purpose of defeating the trust, the *cestui que trust* was entitled to show the declarations of the vendor, made the day before the deed was executed, for the purpose of establishing the trust.

3. EVIDENCE.—In determining the character of the trust, the declarations of the vendor, made with the knowledge and concurrence of the vendee, before the deed was executed, may be looked to in connection with the subsequent acts and declarations of the vendee before the trust was repudiated, but the declarations of the vendor, made subsequent to the execution of his deed, are never admissible evidence to show the intent with which he made the deed.

4. EVIDENCE—TRUSTS.—In determining the question as to whose benefit a
   verbal trust arising on a deed absolute on its face should enure, all the
   declarations of the grantor, made before the deed was executed, and the
   acts of all the parties who participated in the transactions which may
   have led to the making of the deed, as also the subsequent acts and
   declarations of the trustee, may be considered.

5. CHARGE OF COURT.—See statement of case for charges requested arising
   on facts stated, *held* to have been erroneous.

APPEAL from Gonzales.    Tried below before the Hon. George
McCormick.

On the twenty-seventh day of November, 1869, Mrs. Elizabeth
Smith, having five sons and two daughters, all married, con-
veyed land containing nine hundred and thirty-eight acres, on
the Guadalupe river, in Gonzales county, which she had re-
ceived from her father, to her grandson, D. T. Smith, reciting a
consideration of thirty-seven hundred and twenty dollars.    The
deed was one of general warranty, reciting the payment of the
purchase money, and was duly acknowledged and recorded.

On the ninth day of March, 1870, D. T. Smith conveyed to his
uncle, W. W. Smith, four hundred and ten acres of this land, re-
citing a consideration of sixteen hundred and forty dollars.    On
the same day he conveyed to his uncles, David and Harbert
Smith, four hundred and fifteen acres, reciting a consideration of
sixteen hundred and forty dollars, and on the seventeenth day
of December, 1877, he conveyed to his father, James Smith, the
remaining one hundred and five acres of the nine hundred and
thirty acre tract, reciting a consideration of five hundred and
fifty dollars—all by warranty deeds, which were duly acknowl-
edged and placed on record.

On the seventh day of January, A. D. 1881, Mrs. Elizabeth Smith
died intestate.

On the twenty-ninth day of November, 1883, Mrs. M. J. McEl-
yea and Mrs. Elizabeth Murphy, who were daughters of Mrs.
Elizabeth Smith, filed this suit against D. T. Smith, James
Smith, W. W. Smith, Harbert Smith and David Smith, to cancel
the deeds from D. T. Smith to W. W., David, Harbert and James
Smith, alleging fraud and a weak mind on the part of their
mother when the deed was executed.    On the second day of
April, 1885, plaintiffs filed their first amended original petition,
setting forth that both plaintiffs and defendants, except D. T.
Smith (who was a grandson of Elizabeth Smith, deceased), were

the children and constituted all her heirs at law; that Elizabeth Smith died about the seventh day of January, 1881, intestate; that on the twenty-seventh day of November, A. D. 1869, she was persuaded to execute and deliver to defendant D. T. Smith, in secret trust for plaintiffs M. J. McElyea and Elizabeth Murphy, her daughters, and James Smith, David Smith and W. W. Smith, a deed to said nine hundred and thirty acres of land, and that D. T. Smith, disregarding the trust, and having entered into a conspiracy with the defendants to wrong, cheat and defraud plaintiffs out of their just claim and title to said land, did on the ninth day of March, A. D. 1870, execute and deliver to W. W. Smith, Harbert Smith, David Smith and James Smith the deeds above referred to. Plaintiffs averred that no consideration was ever paid by D. T. Smith to Elizabeth Smith, nor was any consideration paid by W. W. Smith, David Smith, Harbert Smith and James Smith to D. T. Smith, for any portion of the land; that the land was at the time of sale, and is still, worth ten thousand dollars; that the deed was made by Elizabeth Smith to D. T. Smith in trust for all her children; that Elizabeth Smith was, at the time she made said deed to D. T. Smith, aged and infirm of body and weak of mind, and that defendants overreached her, and that she never was apprised of their real intentions to defraud plaintiffs; but defendants, up to the time of the death of Elizabeth Smith, always by their acts and words led her to believe that they would carry out the purposes for which the deed by her to D. T. Smith was made, and that plaintiffs in this suit would, after her decease, be allowed an equal portion of said land with the defendants. Plaintiffs further alleged that their portion of the nine hundred and thirty acres of land, as beneficiaries in the deed to D. T. Smith, was one hundred and sixteen and one-third acres each.

Plaintiffs, answering defendants' pleas of three, five and ten years limitation, averred that they could not be maintained in this suit because of the coverture of Mrs. McElyea and Mrs. Murphy at the time said deed was made to D. T. Smith and from D. T. Smith to their brothers; that Elizabeth Murphy was then, and was still, the lawful wife of James Murphy, and M. J. McElyea was at said time the lawful wife of W. P. McElyea, and continued to live with him as such until his death, on the twenty-sixth day of June, 1871. Plaintiffs further denied that defendants had peaceable and adverse possession of the land, and claimed that the same had been held in common by plaintiffs and de-

fendants since the date of the deeds. They denied that they received any advancements, and prayed for judgment, declaring the deeds from D. T. Smith to James Smith, Harbert Smith, David Smith and W. W. Smith null and void; asked that they be canceled, and that plaintiffs M. J. McElyea and Elizabeth Murphy be decreed title each to one hundred and sixteen and three-fourths acres of the land and for costs of suit.

Defendants demurred to plaintiffs' first amended original petition, and specially excepted, viz:

"1. That it appeared from said petition that this is an equitable proceeding to set aside and declare void certain deeds made in November, 1869, and in March, 1870, and more than ten years have elapsed since the alleged execution and delivery of said deeds, and because it appears that said plaintiffs' claim is a stale demand and can not now be enforced.

"2. Because it appears from said petition that certain frauds were alleged to have been perpetrated on the said Mrs. Elizabeth Smith, whereby said deeds were procured to be executed; yet if such was the case it appears from said petition that more than two years, and more than four years have elapsed since the perpetration and discovery of the fraud before the commencement of this suit.

"3. That the bill for relief shows no equitable or legal rights or interest in the complainants to the property described in the bill, for it appears from the bill that the fee simple title to the land was in Mrs. Elizabeth Smith, and there was no contingent or reversionary interest whatever in the complainants, and that Mrs. Smith had perfect right to convey the same, with or without any valuable consideration, and that she lived for more than eleven years after the execution of the deed, and never took any steps, legal or otherwise, to annul the deed."

Defendants denied all the allegations of the petition and pleaded not guilty; they alleged that they had been in peaceable adverse possession of the land claimed by them for more than three, five and ten years next before the commencement of the suit, and they pleaded in form the statutes of three, five and ten years as a bar to the right of the plaintiffs to recover. Defendants further pleaded that if plaintiffs ever had any claim or right to recover the land in suit, that the same had become a stale demand. They denied all the allegations of fraud and of secret trusts, and that there was any undue influence or overreaching practiced upon Elizabeth Smith; they denied that

Elizabeth Smith was of weak and feeble mind at the date of the execution of the deed, but alleged that she was possessed of her full mental vigor and capacity to know and understand what she was doing.

Defendants alleged that it was fully understood and intended by Mrs. Smith at the time said deed to D. T. Smith was executed, that the subsequent deeds made by him to W. W. Smith, Harbert Smith, David Smith and James Smith should be made in the proportion and manner that they were made, and that her object and purpose was at the time, as it had been for a long time previous to said date, to give the land to said parties, who were her own children, as her distribution of her estate among them. They further alleged that Mrs. Smith had, long prior to the date of the deed, given to each one of her daughters, plaintiffs to this suit, their full proportionate share of her estate; that in the year 18— she gave to Mrs. McElyea a certain negro woman valued to her at the time at the sum of one thousand five hundred dollars, and that she gave to Mrs. Murphy in the year 18— a certain negro woman valued to her at the time at one thousand five hundred dollars, and that said slaves were at the time worth the sums fixed; that Mrs. Smith had never given or made any advancements of any kind to her sons, the defendants, and that it was always her purpose and intention to give her lands to her sons as she did do, and which was not more than their pro rata share of her said estate.

The court overruled defendants' demurrer and exceptions, to which defendants excepted.

Verdict for the plaintiffs and judgment accordingly.

The assignments of error are manifest from the opinion.

Appellants by their pleadings admit that the deed from Elizabeth Smith was made in trust for certain purposes, namely, for the benefit of the five sons to the exclusion of the two daughters, the plaintiffs, which was denied by plaintiffs, they claiming that the deed was made in trust for the use and benefit of all the seven children, to be divided share and share alike after death. This was the issue joined, and the only real issue in the case.

The testimony of Harbert Smith, W. W. Smith and D. T. Smith was to the effect that Mrs. E. Smith wanted her five sons to have the land in controversy, as she had given her daughters their share of the estate in negroes; that she did not know which was the best way to do it, whether by will or by deed, and that she, in company with her sons James and Harbert, went to

the town of Gonzales to get legal advice. She there consulted with Mr. Chenault, the county clerk, in whom she reposed confidence, and he advised Mrs. Smith to have the division made by bargain and sale deed, using money to make it a good deed, first conveying to a trustee and then directing him to divide the land out as she desired; and this was accordingly done, he writing the deeds and the transaction taking place in the presence of witnesses. There was evidence that she selected her grandson, D. T. Smith as her trustee, and sent for him about a week before the deed was made to him, and told him that she wanted to divide the tract of nine hundred and thirty acres of land between her five sons, viz.: W. W. Smith, Stroud Smith, Harbert Smith, David Smith and James Smith, and told him that she wanted to convey the whole tract to him, and that then she wanted him to subdivide the tract and to convey to each his share of the land; that D. T. Smith agreed to act in the matter for her and accepted the trust as offered; that in a week from that time he went to her house and the deed was made to him; that she gave him her reasons for not giving any of the land to her two daughters, and also told him that she had been advised by Mr. Chenault to fix the matter up in that way; that in the following March, about three months after the land was conveyed to him, he went to the clerk's office and divided out the lands as he had been directed. To contradict this, and to establish a different trust, appellees, after appellants had closed their case, recalled Mrs. Elizabeth Murphy, who was permitted, over the objection of appellants, to testify as follows, to-wit: That on the evening prior to the day of the execution of the deed from her mother to D. T. Smith, she (witness) had a conversation with her mother (Mrs. E. Smith), at the house of witness; that her mother called her out into the corner of the yard and told her she wanted to talk to her in private, and said to her that her sons (meaning defendants) had been trying to persuade her to make to them a deed to land, but that her husband had told her during his life time not to do so; that she had concluded to make over her land by deed to little Dave Smith, her grandson (meaning D. T. Smith, the trustee), in whom she had perfect confidence, and that he would hold the land until her death, and then divide it out among all her children share and share alike; that her reasons for doing this was that she was afraid that Mr. McElyea (husband to M. J. McElyea) would try to have her land divided up during her life time, which she did not want done, and that she hoped she (witness) would

not think hard of her about it; that the parties (meaning D. T. Smith, Frank Laird, F. E. Harrell et als.) would come there (at witness's house), where Mrs. E. Smith was staying, the next day, for the purpose of fixing up the deed and having it duly exe- cuted. Witness fuither stated: The next fall, after mother died, I talked to W. W. Smith, David Smith and James Smith, and told them that mother had told me on her death bed that she wished her children to divide her land equally; that she feared there would be trouble about the division; she feared there would be trouble about Polly (Mrs. McElyea) getting her share. W. W. Smith said he was willing for me to have mine, but he would spend all he had to keep Polly from getting anything. Daye Smith said about the same.

To all of this testimony appellants objected. First, Because it was hearsay, and second, because it was not made in the pres- ence of trustee and was not competent testimony or legally sufficient to establish a trust, or vary the terms of the trust as executed by the trustee. Which objections were overruled by the court below and the testimony permitted to go to the jury.

The following charges asked by defendants were refused by the court:

"First. A deed absolute upon its face may be shown to be executed as a trust by parol evidence, but such evidence should be carefully considered, and should have been sufficient to estab- lish the trust with clearness and certainty, and the declarations of the grantor to third parties at a time anterior to, or subse- quent to the date of the execution of the deed, when the trustee was not present consenting thereto, can not be heard to establish a trust, or to vary and give direction to its provisions when at variance with the terms sought to be carried out by the trustee.

"Second. In the case now before the jury, it is admitted by both plaintiffs and defendants that the deed from Elizabeth Smith to D. T. Smith was a conveyance in trust, and the jury should look alone to the instructions as communicated by the grantor to the grantee, who is the trustee, for the terms of the trust, and ascertain from that source alone what were the terms and objects of the trust, and if the jury find from the instruc- tions so given to the trustee D. T. Smith that it was the de- clared wish of the grantor that said trustee should, at some subsequent date, by deeds subdivide the land described in the

petition, and convey the same to the defendants, then you should find for the defendants. (Adams's Equity, pages 101, 102, 103.

"Third. If the jury should find from the evidence that the trustee D. T. Smith did not comply with the directions given him by the grantor, Mrs. Elizabeth Smith, at the time of the execution of the trust deed, but that he violated said instructions at the date of the execution of the deeds to W. W. Smith, David Smith, Harbert Smith and Stroud Smith, on the seventh day of March, 1870, and the deed to James Smith on the —————— day of ——————, 1877, then the statutes of limitations would begin to run against such of the plaintiffs whose rights were violated by said deeds from the date of the record of said deeds in the clerk's office of the county court of Gonzales county, unless such plaintiffs were under disability of coverture."

*Harwood & Harwood,* for the appellants: On their proposition that the court erred in overruling defendants' demurrer set out in defendants' second amended answer to plaintiffs' first amended original petition, cited Carlisle v. Hart, 27 Texas, 352, 353, 354; Kuhlman v. Baker, 50 Texas, 631, and authorities there cited; Haskins v. Wallet, 63 Texas, 214; Connolly v. Hammond, 51 Texas, 635; Bremond v. McLean, 45 Texas, 17, 18, 19.

On their proposition to the effect that the court erred in overruling the exceptions to plaintiffs' first amended petition, they cited Kuhlman v. Baker, 50 Texas, 631, and authorities cited; Bremond v. McLean, 45 Texas, 17, 18, 19; Connolly v. Hammond, 51 Texas, 635.

On their proposition that a party seeking equitable relief against fraud is chargeable with laches from the time the fraud was or ought to have been discovered, they cited Connolly v. Hammond, 51 Texas, 647; Bremond v. McLean, 45 Texas, 18; Kuhlman v. Baker, 50 Texas, 631.

They also cited, regarding trusts, the following authorities: Mead v. Randolph, 8 Texas, 198; Miller v. Thatcher, 9 Texas, 482; Neill v. Keese, 5 Texas, 23; Grooms v. Rust, 27 Texas, 234; Markham v. Carothers, 47 Texas, 28.

*Ponton & Fly,* for appellees, in response, cited 59 Texas, 162, 163; Wethered v. Boone, 17 Texas, 143; 1 Perry on Trusts, page 12, sections 14 and 223; Story's Equity, section 553; 2 Story's Equity Jurisprudence, sections 1257, 1258; Brown v. Chenoworth, 51 Texas, 469; Grumbles v. Grumbles, 17 Texas, 472; McKin v.

Williams, 48 Texas, 89; M. S. and R. Cole v. Noble, 63 Texas, 432; Anding v. Perkins, 29 Texas, 348; Hunter v. Hubbard, 26 Texas, 537; Anderson v. Stewart, 15 Texas, 285; Carlisle v. Hart, 27 Texas, 350; Lewin on the Law of Trusts, 590; Dow v. Jewell, 45 American Decisions, 371, being a case taken from 18 New Hampshire, 340; 2 Story's Equity Jurisprudence, 1520; Massey v. Massey, 20 Texas, 134; Cuney v. Dupree, 21 Texas, 211; Grace v. Hanks, 57 Texas, 15; Vandeveer v. Freeman, 20 Texas, 333.

STAYTON, ASSOCIATE JUSTICE. It is shown by the petition that Mrs. Murphy was a married woman at the time the conveyance was made by her mother to D. T. Smith, and that she so continued until the institution of this suit, from which it follows that limitation could not have run against her.

The averments of the petition wherein it alleges that the defendants, during the life time of Mrs. Elizabeth Smith, induced her and the plaintiffs to believe that the trust on which the conveyance to D. T. Smith is alleged to have been made would be carried out after her death, we are of the opinion are sufficient to prevent the running of the statute as to Mrs. McElyea.

The fact that the trustee made conveyances of the entire tract of land to the four sons of Elizabeth Smith, would not cause the statutes of limitations to run if these sons so acted as to induce the belief that on the death of their mother they would convey unto each of their sisters an equal share of the land. If the lands were conveyed to the trustee D. T. Smith on the trust alleged in the petition, then the plaintiffs had an equitable interest in the land, which would follow it into the hands of any person taking it through deeds from the trustee with knowledge of the trust, even if such persons had been purchasers for value, of which there is no pretense in this case.

All the evidence shows that the property was conveyed to D. T. Smith in trust for the five sons alone, or in trust for all the children of Elizabeth Smith. The trust on which the land was conveyed was not evidenced by the deed, nor by any other writing, nor was it shown that the purpose of the trust was declared at the time the conveyance was made to the trustee. The appellants rely upon declarations claimed to have been made by Mrs. Smith several days before the deed was executed, and the appellees, we think, were properly permitted to prove the declarations made by Mrs. Smith to her daughter on the day

before she executed the deed, but after she had determined to do so and had made all the necessary arrangements therefor.

The court below submitted to the jury the following special issues:

First. If Elizabeth Smith conveyed the land described in plaintiffs' petition to D. T. Smith, with the understanding at the time that such conveyance should be for the benefit of any one else other than the said D. T. Smith, state what persons she intended should be benefited by the conveyance. Give the names of each of such persons, if any.

Second. When D. T. Smith accepted the deed from his grandmother, Elizabeth Smith, was there an understanding between Elizabeth Smith and D. T. Smith as to what disposition the said D. T. Smith should make of the land? And if there was such an understanding state what the understanding was, and to whom he was to convey it.

Third. If either of the parties to this suit have had actual possession of the land sued for, give the names of the parties holding such possession, and also state the years during which such possession was held, and whether such possession was adverse to the defendants to this suit. Also state if either of the plaintiffs were married women, which were so married, and the date of the death of the husband.

The jury found on the first issue that the land was conveyed to the trustee in trust for all the children of the grantor. On the second they found that there was an understanding as to the distribution of the land, and that it was to be divided between all the children of the grantor in equal shares. On the third they found that neither of the parties to the suit had been in actual adverse possession of the land.

These findings embrace every material issue in the case. As before said, the plaintiffs and defendants all agree that the land was conveyed to D. T. Smith in trust, and the evidence offered by each party as to declarations made by the grantor, before the execution of the deed, tending to show what the trust was, being of the same character, was made under such circumstances that it all ought to be considered in connection with the subsequent acts and declarations of the sons to whom the trustee made conveyances.

The declarations made by Mrs. Smith to Mrs. Murphy, many years after the conveyance was made to the trustee, ought not to have been received. The rights of the parties were fixed

when the deed was made to the trustee, and the general rule, which rejects declarations made by a grantor after he has parted with title, when introduced for the purpose of affecting the title or right fixed by the deed, must have application in this case.

The wish expressed by Mrs. Smith on her death bed that the land should be divided equally between all her children ought to have been excluded, for the reason stated; but, if admissible, it would only have tended to show what her wish was about eleven years after the rights of the parties were fixed.

The first charge requested would have made any declaration by the grantor, made to the trustee at any time before the land was conveyed to him, conclusive of the question, even though the jury might have believed from the evidence that Mrs. Smith, prior to making the deed and upon the eve of its execution, had declared to all her children, in the ultimate expression of her intention, but not in the presence of the trustee, that the property was conveyed in trust for the equal benefit of all. Neither the trustee nor any of the sons of Mrs. Smith stand as innocent purchasers.

The real question was: For whose benefit was the trust created? And this we are of the opinion must be determined from all the declarations made by the grantor before the deed was executed, and from the subsequent acts and declarations of the trustee and of the sons who took deeds from him, and, as bearing upon the question, the acts of all the parties who participated in the transactions which led to the making of the deed, ought to be considered.

The charge would have confined the jury to a consideration of only part of the evidence which, under the peculiar facts of this case, ought to have been considered, and besides was calculated to cause the jury to give weight to the conduct of the trustee, after the deed was made, to which it was not entitled. The second paragraph of the charge requested was subject to some of the objections stated to the first. Under the facts in evidence the court would not have been justified in giving the third paragraph of the charge asked.

For the error in admitting the evidence of Mrs. Murphy as to declarations made by Mrs. Smith long after the conveyance to the trustee was made, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered January 21, 1887.