**MOSELEY v. FIKES.**

No. 13848.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 10, 1939.

Rehearing Denied March 31, 1939.

Frank C. Bolton, of Henderson, and Austin F. Anderson, of Fort Worth, for appellant.

McGown, McGown, Godfrey & Logan, B. E. Godfrey, and John M. Scott, all of Fort Worth, and W. C. Hancock and Edwin M. Fulton, both of Gilmer, for appellee.

DUNKLIN, Chief Justice.

This suit was instituted by William Moseley against Leland Fikes for relief from the alleged breach by defendant of the trust created by plaintiff's certain deed to him of an interest in two tracts of land in Gregg County. Judgment was rendered in favor of plaintiff for damages in the sum of $1,395, but he has appealed because of the refusal of the court to grant other and different relief for which he sued.

Following is the deed with defendant's written acceptance of it:

"State of Texas, ⎱
"County of Gregg ⎰

"Know All Men By These Presents:

"That We, Young Moseley, of Greenville, Texas, and Williams Moseley, of Fort Worth, Texas, heirs of Mattie Moseley, who was the daughter of Mose Turner, and one of his five children, for and in consideration of the sum of $10.00 cash in hand paid by Leland Fikes, herein called grantee, the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver unto the said grantee all of our undivided right, title and interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following land situated in Gregg County, Texas, towit:

"First Tract: All that certain tract or parcel of land out of the W. C. Wakeland Headright Survey, Abst. No. 218,

"Beginning at the N. W. corner of L. W. Weeklys tract;

"Thence West at 204 vrs. a stake from which a sweet gum bears south 35' 1⁴⁄₁₀ vrs. a pine brs. North 25' 1⁴⁄₁₀ vrs.;

"Thence North at 660 vrs. the North line of the said W. C. Wakelands survey, a stake from which a small pine bears South 15' East 4⁴⁄₁₀ vrs.;

"Thence East with said line at 600 vrs. the N. E. corner of same;

"Thence South with west line of W. H. Castleberrys survey at 660 vrs. the N. E. corner of said Weeklys tract a stake from which a pine bears North 18' 9 vrs. a post oak brs. South 44' E. 4 vrs.;

"Thence West with North line of same at 396 vrs. to the place of beginning, containing in all 70 acres of land, more or less.

"Second Tract: All that certain tract or parcel of land out of the W. C. Wakeland Headright survey, Abst. No. 218, Gregg County, Texas, and

"Beginning 630 vrs. South of the N. W. corner of the Wm. C. Castleberry survey, a stake from which a pine bears N 18' W 9 vrs. a post oak brs. S 44' E 4 vrs.;

"Thence W. 396 vrs. to a stake;

"Thence S. 1240 vrs. to the S boundary line 396 of the said Wakeland survey;

"Thence E. with said boundary line 396 vrs. to the S. E. corner of said Wakeland survey;

"Thence N. 1240 vrs. to the place of beginning, and containing 87 acres of land, more or less; and all other lands formerly owned by Moses Turner and now owned by his heirs, and whether correctly described herein, or not, and whether described herein or not.

"Our intention being to convey all of our right, title and interest in and to the two Mose Turner tracts of land in the W. C. Wakeland survey, Gregg County, Texas, comprising seventy acres, more or less, and eighty-seven acres, more or less, and also all other lands formerly owned by our mother, Mattie Moseley in the said survey, or any adjoining survey, whether correctly or incorrectly described herein, and whether described herein or not, together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said land for oil, gas and other minerals, and removing the same therefrom.

"To Have and To Hold the above described property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said grantee herein, his heirs and assigns forever; and we do hereby bind ourselves,

our heirs, executors and administrators to warrant and forever defend all and singular the said property unto the said grantee herein, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness our hands this 6th day of April, 1931.

"William Moseley
"Young Moseley."

The instrument was duly acknowledged by the grantors.

At the same time, and as a part of the same transaction, Fikes executed and delivered to the grantors the following instrument in writing:

"Fort Worth, Texas, April 6, 1931.
"Mr. William Moseley
"Mr. Young Moseley, 313 East 9th Street, Fort Worth, Texas

"Dear Sirs: In connection with the agreement and mineral deed you have today signed, I further agree to pay all the necessary expense, lawyer's fees, court costs, and other necessary incidentals to defend title to your interest in your mother's estate insofar as your interest is affected in what is known as the Mose Turner 70 acre tract and the 87 acre tract in the W. C. Wakeland HRS, Gregg County, Texas, and to assign and deliver free of cost to you one-half of any royalty which I may recover under your claim of title.

"The specific intent therein being to convey to me a regular 88′ form lease for a ten year period and one-half of the royalty and to keep for yourself the land and one-half of the royalty, as if and when title may be freed from other claims at my expense.

"Yours truly,
"(Signed) Leland Fikes."

The land described in the deed belonged to Mose Turner at the time of his death, in the year 1910. He died intestate. He had fourteen children, but according to undisputed testimony, only five survived him, including Mattie Moseley, plaintiff's mother, who also died intestate. It thus appears that plaintiff inherited through his mother ⅕ of ⅕ interest in the property described in the deed above referred to.

William Moseley instituted this suit against Leland Fikes for the relief hereinafter noted, upon allegations that by the terms of his deed to Fikes and the latter's written acceptance of it, a trust was created in plaintiff's favor, which defendant had breached by disposing of plaintiff's interest in the land reserved to him by those instruments and his refusal to account therefor.

As a special defense, Fikes pleaded plaintiff's alleged contract of settlement of all his interest in the land, evidenced by a written agreement to that effect, embodied in plaintiff's receipt for $200, of date August 26, 1931. In reply to that plea, plaintiff alleged that that stipulation was inserted in a blank space following acknowledgment of payment of $200, and above his signature, all without plaintiff's knowledge or consent.

As another special defense, defendant sought to bind plaintiff by certain legal proceedings taken by B. Reagan McLemore, an attorney at law, upon allegations that the same were performed under employment by plaintiff.

A further special defense was a plea of limitation.

The jury returned findings adverse to the defendant on all those special defenses, and they were the only special issues submitted, from which the defendant did not appeal.

After reciting those findings, the judgment concluded as follows:

"The court finds from the evidence adduced upon the trial and from the verdict of the jury that the plaintiff, William Moseley, is entitled to recover the present market value of one-sixth (⅙) interest in one-half (½) of 8.7 acres; that the present market value of said royalty interest is $2,200.00 per acre; that the value of the interest which said plaintiff is entitled to recover of the defendant, Leland Fikes, is $1,395.00, and that said plaintiff, William Moseley, is entitled to recover from said defendant, Leland Fikes, the sum of $1,395.00, together with interest thereon from this date at the rate of six (6) per cent per annum; and the court, having heretofore overruled the motion for judgment against the defendant, filed by the plaintiff herein, as shown in plaintiff's said motion filed herein on September 25, 1937, decrees as follows:

"It is, therefore, ordered, adjudged and decreed by the court that the plaintiff, William Moseley, do have and recover of and from the defendant, Leland Fikes, the sum of $1,395.00, together with interest thereon, from this date, at the rate of

six (6) per cent per annum, and all costs of suit, for which plaintiff may have his execution."

During the year 1931, Fikes acquired deeds from other heirs of Mattie Moseley to their respective interests in all the oil, gas and other minerals in the two tracts in controversy, as follows: (a) Deed of date March 31, 1931, executed by Joe Moseley, surviving husband of Mattie Moseley, and Nealie (Moseley) Smith, daughter of Mattie Moseley, joined by her husband, and conveying "our entire interest in the estate of Mattie (Turner) Moseley, who was one of the five children of Mose Turner, deceased, insofar as it covers all our right, title and interest in and to all of the oil, gas and other minerals in and under and that may be produced" from the two tracts.

(b) Deed dated May 1, 1931, executed by W. V. Derrick, surviving husband of Virginia (Moseley) Derrick, deceased, daughter of Mattie Moseley, and several of her children, designating themselves as "heirs of Mattie Moseley, who was the daughter of Mose Turner and one of his five children", and conveying all their right, title and interest in the oil, gas and other minerals in the two tracts.

(c) Deed dated June 2, 1931, from Ollie Moseley, designating himself as "heir of Mattie Moseley, who was the daughter of Mose Turner, and one of his five children."

(d) Deed of date June 15, 1931, from M. V. Derrick, as guardian of the estates of J. T. and Irene Derrick, minors, who were children of Virginia (Moseley) Derrick, deceased.

(e) Deed dated June 16, 1931, by Elmo Moseley, reciting that he was heir of Mattie Moseley, daughter of Mose Turner and one of his five children.

(f) Deed dated June 24, 1931, from Chester Ford, grandson-in-law of Mattie Moseley, reciting he executed it as one of the heirs of Mose Turner.

(g) Deed dated July 25, 1931, from W. M. Derrick, grandson of Mattie Moseley.

Young Moseley, who joined with plaintiff in the deed to the defendant, first mentioned above, died, and neither he nor any of his heirs was made a party to this suit.

On the 27th day of July, 1931, Leland Fikes, the defendant, executed to J. K. Wadley an oil and gas lease on all his undivided interest in the two tracts, referring to them as the land "described in deed from Elizabeth Barnes to Moses Turner, dated January 1st, 1880, and duly recorded in Gregg County." And further described as all the interests of the heirs of Mattie Moseley, deceased, except J. T. and Irene Derrick, minors; with further stipulation that the lease shall continue until abandonment of the lease by the lessee if he has complied with all his stipulations thereunder. And on the trial proof was made that the lessee is still operating the same and paying royalties thereon to at least one of the heirs. The consideration recited for that lease was $10 cash paid and ⅛th of the royalty on oil to be produced therefrom.

On August 6, 1931 Leland Fikes executed to Cad McCall a deed with warranty of title, to "all my undivided right, title and interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following land, situated in Gregg County, Texas: (Here follows description of the two tracts of land). And all other lands formerly owned by Moses Turner and now owned by his heirs, and whether correctly described herein or not and whether described herein or not. Said interest being warranted to be not less than 14 full royalty acres out of first tract above referred to and not less than 17 full royalty acres in second tract above referred to.

"My intention being to convey all of my right, title and interest in and to the two Mose Turner tracts of land in the W. C. Wakeland Survey, Gregg County, Texas, whether correctly or incorrectly described herein, and whether described herein or not, together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said land for oil, gas and other minerals, and removing the same therefrom."

That deed was executed by Fikes as a matter of convenience to him, and without the knowledge of McCall, who never claimed any interest under it, but held it for the benefit of Fikes.

On October 26, 1932, and on the occasion hereinafter shown, Cad McCall executed to J. K. Wadley a deed with warranty of title, to "all of my undivided right, title and interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following land situated in Gregg County, Texas, towit: (Here follows description of the

594

two tracts in controversy)." The consideration paid by Wadley for that deed was $7,000, all of which was paid to Leland Fikes, less a commission of $200.

Before trial, and on September 9, 1937, under provisions of Article 3726, Rev.Civ.St., Vernon's Ann.Civ.St. art. 3726, defendant filed with the papers in the case a certified copy of a purported deed executed by Mattie Moseley and her husband, Joe Moseley, to Willis Turner, of Gregg County, Texas, dated February 8, 1924, reciting that Mattie Moseley was a daughter of Mose and Jane Turner, both deceased, and conveying to him with warranty of title, "all of my undivided interest in that certain 70 acre tract of land situated in Gregg County, Texas, being about 4 miles east of the town of Gladewater, and out of the N. E. corner of the W. C. Wakeland Survey, and the same 70 acre tract conveyed by Elizabeth Barnes to Moses Turner by deed dated January 1st, 1880, and recorded in Vol. F, on pages 127-128, Deed Records of Gregg County, Texas." The consideration expressed in the deed was $20 cash paid and the grantee's two notes payable to Mattie Moseley or order in Gilmer, Texas, one for $10, due April 15, 1924, and the other for $68, due November 1, 1924. The vendor's lien was expressly retained to secure payment of the two notes. Signatures to the deed were, "Joe (x his mark) Moseley, Mattie (x, her mark) Moseley." The certificate of acknowledgment by both makers, in statutory form, was dated February 12, 1924, and signed, "S. J. Moughon, Co. Judge, Upsher Co., Texas." The certified copy further shows the deed was filed for record in Gregg County, April 2, 1931, and recorded in Vol. 75, p. 461, deed records of that County.

At the time that instrument was filed with the papers in the case, defendant served counsel for plaintiff with statutory notice that the same would be offered in evidence upon trial of the case. On the following day, towit, September 10, 1937, plaintiff filed with the papers of the case his affidavit in writing that he believed that purported deed to be forged. The judgment recites that the trial of the case began on September 13, 1937.

No witness was introduced by the defendant to prove the execution of the deed by Mattie Moseley, who had died before the case was tried; and plaintiff objected to its introduction in evidence on that ground, but the objection was overruled and plaintiff has assigned error to its admission in evidence. In connection with that instrument, and apparently to show ratification by Mattie Moseley of the deed, defendant was permitted to introduce in evidence a certified copy of plaintiff's petition, filed in the District Court of Upshur County, Texas, December 21, 1925, by Joe Moseley, alleged to be surviving husband of Mattie Moseley, deceased, joined by several other parties, some of whom were the heirs of Mattie Moseley, against W. S. (Willis) Turner, to recover title to said 70 acre tract, and in the alternative, for judgment on the two vendor's lien notes recited in the purported deed from Mattie Moseley to Willis Turner. Plaintiff was not named as one of the parties to that petition and he objected to its introduction on that ground, and on the further ground that, as shown by its recitals, Mattie Moseley was dead when it was filed. But the objection was overruled and error is assigned to that ruling. No other evidence was offered to prove the execution of the deed by Mattie Moseley.

It is our conclusion that the court erred in admitting the certified copy of that deed. In Jester v. Steiner, 86 Tex. 415, 418, 25 S.W. 411, 412, this was said: "When defendant filed his affidavit of forgery, 'it cast upon the party offering the deed the burden of proving its execution in accordance with the rules of the common law.' Cox v. Cock, 59 Tex. [521], 524; Robertson v. Du Bose, 76 Tex. 1, 13 S.W. 300. To state the same proposition in a different form, when the defendant filed his affidavit the deed was no longer admissible as evidence under the statute, but, before it could be read in evidence the execution of it must be proved as at common law. The acknowledgement and record of the deed, the filing and notice to defendant, as well as the affidavit of forgery, ceased to have any bearing upon the trial. The trial must then proceed as if the deed had not been acknowledged or recorded, and no affidavit had been filed. Thus, it may be said that the filing of the affidavit of forgery cast upon the person producing the deed the burden of proving its execution."

Of like effect was Belcher v. Fox, 60 Tex. 527, and authorities there cited.

And since neither plaintiff nor Mattie Moseley was a party to the petition filed in the District Court of Upshur County, on December 21, 1925, referred to

above, we believe it clear the same was not admissible against plaintiff. Bolt v. State Savings Bank of Manchester, Iowa, Tex.Civ.App., 145 S.W. 707; D. Sullivan & Company v. Ramsey, Tex.Civ.App., 155 S.W. 580, 589; Missouri Pac. Ry. Co. v. Heidenheimer, 82 Tex. 195, 17 S.W. 608, 27 Am.St.Rep. 861.

On December 21, 1931, J. K. Wadley entered into an agreement with the Atlantic Oil Producing Company, reciting that each of those parties owned an undivided one-half interest in the 70 acre tract and 87 acre tract in controversy here, and two other designated tracts, and in which the Atlantic Oil Producing Company agreed to develop and operate said lands for production of oil and gas on the joint account of the parties and for their joint benefit.

■ Over plaintiff's objection, defendant introduced in evidence a judgment of the District Court of Gregg County, of date October 26, 1932, in Cause No. 7736-A, styled J. K. Wadley v. Arley Moseley et al. As shown by the judgment, divers and sundry parties were defendants in the suit which involved title to the oil, gas and mineral rights in the two tracts of land in controversy here. It recites appearance by counsel of a number of defendants, including Leland Fikes and Cad McCall; and a dismissal of the suit, on plaintiff's motion, as to many other defendants not served with citation, including Young Moseley, Will Moseley, unknown heirs of Mose Turner and Mattie Moseley. It decreed that title to all the oil, gas and mineral rights on the two tracts be divested out of all the defendants who appeared, and that the 7/8 lease interest in the land be vested in the Atlantic Oil Producing Company and J. K. Wadley, in equal shares; and that the royalty interest in the land be vested in numerous other parties, in stated proportions of royalty acres to each, which were itemized, including defendant, Cad McCall, to whom was awarded 8.7 acres.

The judgment rendered in this case was for the value of one-half of one-sixth of that 8.7 acres thus awarded to McCall, viz., .725 acres.

It is to be noted that the deed from Cad McCall to J. K. Wadley, for which defendant was paid $6,800, was executed on the same date of the judgment; and also that theretofore, on July 27, 1931, defendant had executed to Wadley an oil and gas lease on all his undivided interest theretofore acquired from the heirs of Mattie Moseley, deceased, except two minors; and, as shown above, he later acquired a like interest from those minors, through their guardian. Among the grounds of plaintiff's objection to the admission of that judgment was that defendant had already parted with all his interests in the property when the judgment was rendered; also because, as shown in that judgment, plaintiff was not a party to the suit when it was rendered, and therefore he could not be bound thereby; and further, because, as testified by the attorney who filed answer to that suit for defendant, Fikes, the judgment represented a compromise settlement between the parties, and not a determination of a disputed issue of title.

In admitting the judgment in evidence, over those objections, the court erred. Certainly plaintiff could not be bound by the judgment after he was dismissed from the suit, on plaintiff's own motion, unless the judgment against Fikes was conclusive of his interest also; which, as between plaintiff and Fikes, was not true, since the deed to Fikes was on condition that he would reconvey to plaintiff one-half interest in what was conveyed, after a clearance of title, and Fikes was without power to agree to a judgment which was in disparagement of plaintiff's said interest. Whether or not Wadley could hold plaintiff's rights under plaintiff's deed to Fikes, or the deed to him, Wadley, from McCall, or under the judgment noted, under the doctrine of innocent purchaser, is not before us here; the rights of plaintiff against defendant for violating the agreement under which he acquired the deed from plaintiff, being the only issue to be determined. If the judgment was binding against Fikes, it affected his interest in the property only and not that of plaintiff. Bullock v. Smith, 72 Tex. 545, 10 S.W. 687; Kahn v. Kahn, 94 Tex. 114, 58 S.W. 825; Hooks v. Neill, Tex.Civ.App., 21 S.W.2d 532, 539, writ of error refused; Smith v. McElyea, 68 Tex. 70, 3 S.W. 258; Neyland v. Bendy, 69 Tex. 711, 7 S.W. 497; Murphy v. Johnson, Tex.Civ.App., 54 S.W.2d 158.

■ In plaintiff's third amended original petition, allegations were made that one of the inducements which caused plaintiff to execute the deed in controversy was defendant's promissory oral representation theretofore made, on April 1, 1931, that after he should clear title to the land, he

would sell plaintiff's interest to be reconveyed and account to plaintiff for the amount realized from such sales; with further allegations of subsequent execution by defendant of the instruments noted above; and praying for a recovery of proceeds realized by defendant therefrom. The court sustained defendant's special exception to those portions of plaintiff's petition, on the ground that proof thereof would be in violation of the parol evidence rule, because at variance with defendant's written agreement to reconvey the same interest to plaintiff. Following an exception to that ruling, plaintiff filed a trial amendment eliminating those allegations from his petition.

We believe there was no error in the ruling, and hence all assignments of error based on the allegations covered by the special exception are overruled. 42 Tex. Jur., sect. 71, p. 683, and decisions cited; 17 Tex.Jur., sect. 354, p. 794; Russell v. Russell, Tex.Com.App., 120 S.W.2d 793.

■ Other portions of plaintiff's petition, to which the court sustained defendant's special exception, consisted of allegations that the procurement by defendant of the conveyances from other heirs of Mattie Moseley of their interests in the property set out above, at about the same time plaintiff's deed was executed, was in pursuance of a fraudulent scheme by the defendant to cheat all of those heirs out of some of their valuable rights in the two tracts of land.

No reversible error is shown in that ruling, because plaintiff would be entitled to all the relief prayed for in his petition if defendant breached the trust reposed in him, evidenced by plaintiff's deed to him, and the terms of his written acceptance of it, regardless of the truth of those allegations of a fraudulent scheme. A finding for or against those allegations would neither add to nor lessen the relief prayed for as the result of the alleged breach of trust.

■ Plaintiff pleaded estoppel against the defendant to deny his warranty in his deed to Cad McCall, dated August 6, 1931, to the effect that the interests he had acquired from plaintiff and other heirs of Mattie Moseley covered not less than 17 acres in the 87 acre tract, and not less than 14 acres in the 70 acre tract. Since plaintiff was not a claimant of title under that instrument, or under the deed thereafter made by McCall to Wadley, but was claiming relief solely because of alleged viola-

tion of the trust, the court did not err in overruling that plea of estoppel. 17 Tex. Jur., par. 357, p. 801; Kahle v. Stone, 95 Tex. 106, 65 S.W. 623; Harris v. Mayfield, Tex.Com.App., 260 S.W. 835; 2 Pom.Eq.Jur. (4th Ed.) par. 840; Kuykendall v. Spiller, Tex.Civ.App., 299 S. W. 522.

■ Plaintiff alleged that in violation of the trust created by his deed and the terms of its acceptance, defendant disposed of the interest which he contracted to reconvey to plaintiff, and used the proceeds derived therefrom in investments evidenced by several deeds from other parties to defendant and other persons, which were set out in his pleading. With further allegations that since the funds belonging to plaintiff were used by defendant in those investments, and since they were trust funds, the investments were impressed with the same trust, and therefore plaintiff was entitled to recover all of defendant's interests in the investments so made, even though defendant commingled other funds of his own in their acquisition; and a recovery was sought for title to said interests in plaintiff's first count for relief. In his second count for relief, and as an alternative to his first count, plaintiff sought a decree impressing those investments with a trust in his favor, to the extent and in proportion to the amount of trust funds belonging to him and used in their acquisition.

As a second alternative for relief, plaintiff prayed for damages for breach of the trust, measured by the present value of the interest which defendant agreed to reconvey to him, after clearance of title to the property.

In support of the relief prayed for in the first two counts for relief noted, plaintiff offered depositions of Fikes, taken before trial, in which he testified he did not keep the funds received from sales of the interests claimed by plaintiff separate from other funds of his own; he kept accounts in different banks; could not remember how he paid for some of those investments; on advice of counsel of its inadmissibility, he declined to answer how he paid for others; supposed he paid for others by checks on his bank account. The court sustained defendant's objection to all that testimony.

Although defendant further testified that he had money of his own acquired from other sources, with which he paid for all

those investments, we believe the court erred in the ruling noted, under the general doctrine relating to commingling of trust funds by a trustee with his own, and the adverse presumption that may be indulged from his refusal to answer questions propounded by plaintiff's attorney, under circumstances such as appear here. Mitchell v. Napier, 22 Tex. 120; 17 Tex. Jur., par. 88, p. 308; Meyers v. Baylor University, Tex.Civ.App., 6 S.W.2d 393, error refused; Spencer v. Pettit, Tex.Civ. App., 17 S.W.2d 1102, affirmed by Sup. Court 34 S.W.2d 798; 3 Pomeroy's Eq. Jur., sects. 1051, 1075, 1076.

■ We quote the following from Meyers v. Baylor University, supra [6 S. W.2d 394]:

. "It is quite true that the burden of proof was upon plaintiff to establish the trust, but, when proof of the fiduciary relationship of the parties was made, the betrayal of the trust, the probable amount of the embezzlements shown, a prima facie case was presented, and the burden was then on Meyers to show, if he could, that his money, and not that of the plaintiff, paid for the properties in whole or in part.

"Meyers was in possession of the exact facts, and it was his duty to reveal the entire truth. As he did not testify, and made no explanation of this matter, every intendment is against him. 20 C.J. p. 482, § 78; 39 Cyc., p. 476.

"As stated in our conclusions, Meyers deposited his own and . money embezzled from plaintiff to his personal credit in the banks, thus destroying the identity of the funds; hence the whole mingled fund became subject to the trust, as well as all property purchased therewith.

"The rule applicable to these facts is clearly and satisfactorily stated in 39 Cyc. p. 538, as follows:

"'Where a trustee so mingles the trust fund or property with his own, or so invests it in property together with his own, that the trust fund or property cannot be separated, or the amount of each ascertained, the whole mingled fund or property becomes subject to the trust, except so far as the trustee may be able to distinguish or separate his own fund or property, the burden of making such distinction or separation being on the trustee or his representatives; and this rule applies so long as any portion of the fund or property into which the trust fund or property can be traced, remains.'"

■ In reply to the assignment of error last noted, defendant says this in his brief:

"Plaintiff in error, having elected to seek judgment for the value of the alleged trust property disposed of by Fikes, with interest, has waived his right for the recovery of other properties into which he could trace the proceeds of the sale of the alleged trust property owned by him."

In support of that contention, appellee cites 15 Tex.Jur., sect. 2, p. 820, 42 Tex. Jur., par. 149, p. 770, and other authorities, such as Murphy-Bolanz Land & Loan Co. v. McKibben, Tex.Com.App., 236 S. W. 78, all announcing the general doctrine that a party having more than one remedy growing out of the same right of action, is bound by the remedy he elects to pursue.

Rule 4, governing procedure in District and County Courts, reads: "The plaintiff, in the original petition, in addition to the names and residences of the parties and the relief sought, may state all of his facts, so as to present together different combinations of facts, amounting to a cause or causes of action, as has been the usual practice, or he may state the cause or causes of action in several different counts, each within itself presenting a combination of facts, specifically amounting to a single cause of action, which, when so drawn, shall be numbered, so that an issue may be formed on each one by the answer."

In Colbert v. Dallas Joint Stock Land Bank, 129 Tex. 235, 102 S.W.2d 1031, it was held that under Rule 4, in connection with provisions of Art. 2003, Rev.Civ.St., plaintiff may in alternative counts seek different remedies under facts alleged in the petition, even though such facts are not set out in different counts. The following statement in the syllabus recites the holding in Palmer v. Bizzell, Tex.Civ.App., 229 S.W. 971: "Where remedies were alternative and concurrent and not inconsistent, the pursuit of one will not exclude the other until a satisfaction is had." To the same effect is the decision in Rick v. Farrell, Tex.Civ.App., 266 S.W. 522.

■ Moreover, in Holland Texas Hypotheek Bank v. Broocks, 266 S.W. 183, by Court of Civil Appeals, writ of

**598**

error refused, and Betty v. Tuer, Tex.Civ. App., 292 S.W. 271, it was held that the defense of estoppel by election of remedies must be presented in the trial court and cannot be raised for the first time on appeal, as is true in the case now before us.

■ It was also error to exclude testimony of three witnesses offered by plaintiff, to prove the present market value of the interests conveyed by plaintiff by his deed to defendant, and the latter's acceptance of it, and to refuse to submit those issues to the jury, as requested by plaintiff, because those values constituted the measure of damages sought in plaintiff's third count for relief. But it was not error to exclude a certificate from the State Comptroller of Public Accounts, with itemized account attached showing oil sales and amounts received therefor from the lands in controversy, on divers dates, beginning September, 1935, and ending in May, 1937, because same was not proof of market value at the time of trial, which was the issue upon which plaintiff offered it.

■ Complaint is made of admission of testimony of an attorney at law, employed by defendant, that he had examined the deed records of the county and had discovered instruments which constituted clouds on the title of plaintiff and other heirs of Mattie Moseley, deceased, and under employment by defendant, he had appeared for him in the suit in No. 5409, in the District Court of Upshur County, heretofore referred to. Defendant offered that testimony to show performance by him of his obligation to clear title to the tracts in controversy. The opinion of the attorney, based on his examination of the deed records and abstract of title, that plaintiff's title was clouded, was a conclusion of law, and inadmissible over plaintiff's objection on that ground. But his testimony that he appeared for Fikes in the suit was admissible for the purpose it was offered, if the witness was employed to clear plaintiff's title of clouds existing when plaintiff's deed was executed. However, it may be noted here that performance by defendant of his obligation to clear the title of clouds would be no defense to plaintiff's suit for relief, based on the alleged breach of trust.

■ While plaintiff's deed to defendant was sufficient on its face to convey to Fikes full legal title to all of plaintiff's interest in the oil, gas and other minerals in place in the land in controversy, yet defendant's written acceptance of it must be read into it. And when that is done, we believe a clear showing is made that defendant held in trust for plaintiff one-half the royalty which he contracted to reconvey to plaintiff after title should be cleared. The contract had to do with minerals in place. In Hager v. Stakes, Tax Collector, 116 Tex. 453, 294 S.W. 835, 842, the court answered certified questions by the Court of Civil Appeals as to whether royalty reserved to the owner in an oil and gas lease was taxable as realty or as personal property. In the opinion, many former decisions are reviewed, following which this was said:

"Our answers to all the certified questions might be rested on the following propositions:

"First. That minerals in place are realty, and as such are subject to ownership, severance, and sale, as settled by the decisions in Texas Company v. Daugherty, 107 Tex. [226], 236, 176 S.W. 717, L.R.A. 1917F, 989, and Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A.L.R. 566.

"Second. That a severance may be accomplished by means of a conveyance of the minerals or by means of an exception or reservation in a conveyance, as clearly pointed out in the opinion of Chief Justice Cureton in Humphreys-Mexia Company v. Gammon, 113 Tex. [247], 256, 254 S.W. 296, 29 A.L.R. 607, and in the cases there cited.

"Third. That in every instance one who owns a tract of land or an undivided interest therein, including the minerals, can be divested of his interest in minerals in place only by a deed containing words sufficient to operate as a conveyance of an interest in land, as distinctly held in W. T. Waggoner Estate v. Wichita County [273 U.S. 113], 47 S.Ct. [271], 273, 71 L.Ed. [566], and in States Oil Corporation v. Ward (Tex.Com.App.), 236 S.W. 446. However, no technical words are necessary, but effect will be given to whatever language discloses the intent to divest the owner of his mineral estate, in whole or in part.

"Fourth. Each of the leases set out in the certificate left the lessor with an interest in minerals which was real property.

"Fifth. Real estate is ordinarily taxed as a unit; yet, where there have been severances by conveyance, exception, or

reservation, so that one portion of the realty belongs to one person and other portions to others, each owner should pay taxes under proper assessment against him of the portion owned by him. The fact that a portion may consist of minerals or of a fractional interest therein makes no difference, as outlined in State v. Downman (Tex.Civ.App.), 134 S.W. [787], 795, and Downman v. Texas, 231 U.S. [353], 356, 357, 34 S.Ct. 62, 58 L.Ed. 264.

The trust so created was fixed by express terms of defendant's acceptance of the deed and was sufficient to meet all the tests invoked by appellee in his counter propositions, namely: First, there was a separation of the royalty held in trust by defendant for plaintiff's benefit, from the interest acquired by the defendant, as required by authorities cited by appellee, such as 42 Tex.Jur., par. 3, p. 600, and decisions cited, including Wheeler v. Haralson, 128 Tex. 429, 99 S.W.2d 885.

Second, the royalty reserved was realty and in being when the trust was created, which is another test announced in 1 Restatement of Trust, par. 75, p. 225. Third, while the amount of the royalty was not definitely stated, according to another test announced in 26 R.C.L. par. 20, p. 1183, and other authorities, yet defendant cannot complain, since the determination of the amount was left entirely within his discretion, free of control by plaintiff; and furthermore, the usual and customary royalty would be implied in the absence of some stipulation to the contrary.

In Powell v. Parks, 126 Tex. 338, 86 S. W.2d 725, it was held as reflected by this statement in the syllabus to the opinion by the Commission of Appeals: "Conveyance of mineral leases under grantee's agreement to sell leases and divide receipts with grantors held conveyance in trust to enable grantee to sell property and make distribution of proceeds of sale according to terms of agreement."

In Home Investment Co. v. Strange, 109 Tex. 342, 195 S.W. 849, 852, 204 S.W. 314, 207 S.W. 307, this was said by the Supreme Court: "Moroney having acquired the title to the lots in question when there existed between him and Strange the relationship of attorney and client, with a contract between them that he would secure the title to the lots for Strange, he must be regarded in equity as holding the legal title in trust for the latter."

To the same effect are the following authorities: Wallace v. Pruitt, 1 Tex.Civ. App. 231, 20 S.W. 728; Redwine v. Coleman, Tex.Civ.App., 71 S.W.2d 921; Faville v. Robinson, 111 Tex. 48, 227 S.W. 938.

Plaintiff inherited through his mother, Mattie Moseley, ⅕ of ⅙ or 1/30, of the 157 acres in the two tracts, which amounted to approximately 5.23 acres. Deducting therefrom ½, which defendant was to receive under the contract evidenced by plaintiff's deed to defendant and the latter's acceptance of it, if defendant performed his contract thereunder, leaves approximately 2.61 acres net to plaintiff. But, as noted above, the judgment in plaintiff's favor was on a basis of .725 acres only, recited as ⅙ of ½ of 8.7 acres awarded to Cad McCall by the judgment rendered by the District Court of Gregg County, in Cause No. 7736-A, entitled J. K. Wadely v. Arley Moseley et al., thus binding plaintiff by that judgment, which, as noted above, was not admissible against him; and also giving effect to the purported deed from Joe and Mattie Moseley of date February 8, 1924, to the 70 acre tract, which was likewise erroneously admitted in evidence.

For the errors pointed out, the judgment is reversed and the cause is remanded for further proceedings not inconsistent with our foregoing conclusions.

### On Motion for Rehearing.

In our original opinion, we did not intend to decide the correct rule for determining the measure of plaintiff's damages, claimed in his alternative and final prayer for relief. We express no opinion as to that issue, because that relief is prayed for as an alternative to other relief noted in our original opinion, and plaintiff has made no election as between the different remedies sought—not even as to whether he will elect to claim as such damages what defendant realized from the disposition of the mineral interests conveyed to him by the deed in controversy or their market value at the time of trial, less a credit in either event for the $200 heretofore paid by defendant to plaintiff, as already shown, and less any other credits to which defendant may be entitled under principles of equity; in accordance with the rule announced in 42 Tex.Jur., para. 146, p. 768; and decisions there noted, including McCord v. Nabours, 101 Tex. 494, 109 S.W. 913, 111 S.W. 144; Boothe v. Fiest, 80

Tex. 141, 15 S.W. 799; Id., Tex.Sup., 19 S. W. 398; Mixon v. Miles, 92 Tex. 318, 47 S.W. 966.

For the same reason, we overrule plaintiff's prayer for a remand of the case for trial only of the issue of such damages.

Nor did we intend to determine, and do not determine, the amount of acreage in which plaintiff is entitled to recover a royalty interest under any theory of plaintiff's pleadings; and nothing we have said in our opinion is to be so construed.

■ The certificate of the Comptroller of Public Accounts, purporting to show the oil produced and sales thereof during the period covered by the certificate, having been offered by plaintiff only to show market values of such oils, his motion for a ruling by this Court now, as to whether the same is admissible to show the amount of oil produced, cannot be considered.

With the foregoing explanations, appellant's motion for a rehearing is overruled.

Appellee's motion for rehearing, reiterating their various contentions and arguments presented in their briefs, after due consideration, is overruled.