**BRENNAN et al. v. GREENE et al.**
No. 10936.

Court of Civil Appeals of Texas.
San Antonio.
July 2, 1941.

Rehearings Denied Oct. 1, 1941.

Taliaferro & Graves, of Houston, W. H. Reid, of Dallas, and B. D. Tarlton, of Corpus Christi, for appellants.

John C. North and Neel, King & Rachal, all of Corpus Christi, and Kilgore & Rogers, of Wichita Falls, for appellees.

MURRAY, Justice.

This is an appeal from a judgment rendered in the District Court of Jim Wells County, Texas, on February 10, 1940, in a trial before the court without a jury, decreeing, among other things, that O. W. Greene, Irene Schley Greene, Winifred Westervelt Flato and husband, Edwin Flato, Nellie Westervelt Vaughan and hus-

band, David Vaughan, who are the appellees herein, have judgment against all other parties to this suit, removing any and all clouds cast by such parties from two tracts of land located in Duval County, Texas, being: First: The west three-fourths of Survey No. 118, Certificate No. 1/864, State Abstract No. 1883, original grantee, B. S. & F., containing 418 acres. Second: Survey No. 66, Certificate No. 1658, Abstract No. 1882, original grantee, B. S. & F., containing 640 acres—providing further, however, that the decree should not be construed as affecting any right, title or interest of any person, firm or corporation holding under, by or through the above named appellees. The judgment contains other provisions not necessary to mention here.

There is no attempt to establish a common source of title antecedent to the community estate of Thomas H. Brennan and wife, Eudocio Brennan.

The appellees may be classified as O. W. Greene and wife, and the heirs of E. C. Westervelt.

Three briefs have been filed by appellants. The first brief is by W. H. Reid, Esq., and is in behalf of Nellie E. Ault, appellants who may be described generally, without the necessity of naming each one, as the "Heirs of P. H. Brennan," and appellants who may likewise be referred to as the "Heirs of W. E. Brennan." The second brief is by T. W. Graves, Jr., Esq., and is in behalf of Winnifred H. Johnston and husband, C. Hume Johnston. The third brief is also by T. W. Graves, Jr., Esq., and is in behalf of appellants who may be described generally as "heirs of Katy E. Moore."

On October 6, 1913, Eudocio Brennan, individually and as the survivor of the estate of her deceased husband, Thomas Brennan, executed a deed attempting to convey the two surveys above described to her six children, who were all of the heirs of herself and her husband, Thomas H. Brennan. These six children were Fannie L. Brennan (who afterwards became Fannie L. Ihlenberg), Katy E. Moore, Nellie E. Ault, Winnie H. Mills, P. H. Brennan and W. E. Brennan.

As above stated, the appellants herein are either these six children or their heirs, with the exception of Fannie L. Ihlenberg, who has not perfected an appeal, and the judgment below has become final as to her and those claiming by, through or under her.

While the record is very voluminous and there are many and varied transactions referred to, this appeal really presents only four main questions, as follows:

First: Was a certain judgment entered in the District Court of Jim Wells County, on the 19th day of January, 1922, in cause No. 2977, styled E. B. Ault et al. v. V. Lozano et al., a final judgment?

Second: Was a certain alleged deed from J. B. Mills and wife, Winifred Mills, to E. B. Ault and Nellie E. Ault, dated the 16th day of November, 1914, forged?

Third: Was a certain alleged deed of trust lien from P. H. Brennan, Katy Moore and husband, Charles A. Moore, W. E. Brennan, Nellie E. Ault and husband, E. B. Ault, and Fannie L. Brennan to H. N. Whaley, for the use and benefit of E. L. Coleman, forged insofar as the signatures of Katy E. Moore, Charles A. Moore and W. E. Brennan are concerned?

Fourth: Was a certain alleged deed from Katy E. Moore and husband, C. A. Moore, to E. B. Ault and Nellie E. Ault, dated the 11th day of January, 1916, forged?

It is clear that if the judgment was a final judgment and the three instruments genuine, appellants have no interest in the two tracts of land involved herein and the judgment properly removed all clouds from the title of appellees to the land. The trial judge filed his findings of fact and conclusions of law, in which he found that the judgment was final and the instruments not forgeries but genuine and valid documents. We have concluded that the evidence was sufficient to support these findings by the trier of facts.

 It is contended by appellants that the judgment in cause No. 2977, rendered in 1922, was not a final judgment, in that it did not dispose of all the parties and issues raised by the pleadings. There were many pleadings filed in that cause, including petitions, supplemental petitions, amended petitions, answers, supplemental answers, amended answers and cross-actions. It would unduly extend this opinion to describe each one of these pleadings and tell the effect of each. It is sufficient to say that the judgment effectively disposed of all the parties named in the amended pleadings which had not been superseded at the time of the trial, and which were the live pleadings upon which the trial was had. Attempt had been made to bring new parties

into the suit, by naming them in supplemental pleadings, who were later effectively dismissed from the cause by failure to name them in amended pleadings subsequently filed. We seriously doubt if new parties can be made by naming them in supplemental pleadings. District Court Rules Nos. 4, 5, 13, 14 and 15, 142 S.W. pages XVII, XVIII. If, however, they were made parties by supplemental pleadings, they were just as effectively dismissed from the suit by omitting their names from amended pleadings subsequently filed, as if a formal order of dismissal as to them had been entered. First State Bank of Terrell v. Rice, Tex.Civ.App., 251 S.W. 284; Dial v. Martin, Tex.Civ.App., 8 S.W.2d 241; San Antonio & A. P. Ry. v. Mohl, Tex.Civ.App., 37 S.W. 22; St. Louis Southwestern Ry. v. Texas Packing Co., Tex.Civ.App., 253 S.W. 864.

■ Furthermore, the judgment in cause No. 2977, rendered in 1922, recites that it is a judgment by agreement of the parties. Where a judgment is entered by agreement all errors are cured which do not go to the jurisdiction of the court. Sandoval v. Rosser, Tex.Civ.App., 26 S.W. 930.

■■ The judgment in cause No. 2977, rendered in 1922, recited that it was by agreement of the parties, and it will be presumed that all of the parties were present in open court and entered into the agreement. Sandoval v. Rosser, supra; Hutchinson v. Owen, 20 Tex. 287; Duke v. Gilbreath, Tex.Civ.App., 10 S.W.2d 412. If any party to the cause wished to contend that he did not in fact agree to the judgment, he would have to do so by a direct attack upon the judgment and cannot do so in a collateral proceeding. Laird v. Thomas, 22 Tex. 276; Duke v. Gilbreath, supra.

■ The judgment in cause No. 2977, entered in 1922, being a final judgment, was in no way affected by the attempt in 1932 to enter a different judgment nunc pro tunc. In fact, all parties concede that the nunc pro tunc judgment of 1932 was a nullity.

This brings us to a consideration of whether or not the alleged deed from J. B. Mills and wife, Winifred Mills, to E. B. Ault and Nellie E. Ault, dated November 16, 1914, was a forgery insofar as the signature of Winifred Mills was concerned.

Appellees filed a certified copy of the above alleged deed, together with an affidavit stating that the original deed had been lost and could not be produced. Appellants, in due time, filed an affidavit that the signature of Winifred Mills to the deed was a forgery. Mrs. Mills testified, in substance, that she did not sign or acknowledge the deed; that she did not even appear before Judge Jesse Wright, who, as a notary public, was supposed to have taken her acknowledgment to the deed. The acknowledgment was dated November 16, 1914. Mrs. Johnson, formerly Mrs. Mills, testified she gave birth to her first child on November 14, 1914; that she had a very hard time at the birth of her first child, was in labor two days, and was unable to move on November 16, 1914, and could not have sat up in bed and have signed her name on that date.

J. B. Mills, her husband at the time, testified that he did not remember signing the deed, but would not state positively that he did not both sign and acknowledge the instrument.

Judge Jesse Wright, the notary public who was supposed to have taken the acknowledgment of Mrs. Mills, was called as a witness and testified as follows:

"My name is Jesse Wright, sometimes called Judge Wright. I live in Corpus Christi, Texas, and have lived there since August, 1908. I was living there on August 16, 1914.

"I have known Winifred Johnson, formerly Winnie Mills, the lady who just testified, a good many years ago, but I probably couldn't recognize her now without somebody telling me who she was. I haven't seen her many times and was never closely acquainted with her. I was acquainted with her when she was Mrs. Mills.

"I did take the acknowledgment of J. B. Mills and wife, Winifred Mills, to some instrument. As to this certified copy of a deed from J. B. Mills and wife, Winifred Mills, to E. B. Ault and Nellie E. Ault, bearing date November 16, 1914, acknowledged by J. B. Mills and Winifred Mills before me as a Notary Public, on the 16th day of November, 1914, conveying two tracts of land in Duval County, one of said tracts being Survey No. 66, fully described in said deed; the other tract being known as Survey 118, containing 480 acres of land, well, from my own independent memory, I would feel a delicacy in saying that notwithstanding the date it would be almost impossible for it to be any other instrument.

"I heard the testimony of Mrs. Mills that her child was born on November 14, 1914. My Notarial Record was destroyed in the

storm of 1919, otherwise I could identify the land from my record. I kept a Notarial Record along that time and since then, up until this statute was changed. I believe Mrs. Mills testified her first child was born in November, 1914, about a couple of days before this. Well, that is the circumstance by which I would fix the acknowledgment as being to that instrument.

"I did take an acknowledgment to an instrument or conveyance by Mrs. Mills while she was in bed with a small child—a baby. I never took any other acknowledgment of Mrs. Mills under those circumstances, and I doubt if I ever took another acknowledgment in my life under those circumstances. I can testify that I took an acknowledgment from Mrs. Mills about this time, when she had a baby about two days old. I can't testify as to the description of the land. I never took any other acknowledgment from her under those circumstances.

"Mr. Ault took me out to take Mrs. Mills' acknowledgment. He was on the premises —in the house—when I took her acknowledgment, but whether he actually saw it or not I can't say, because I don't remember. He was there because he took me back to town. It was out about a half or three-quarters of a mile from my office.

"Mr. Ault or Mrs. Ault, one or the other, was the grantee in the deed, and there may have been others, I am not sure. My record is gone, and for twenty years I guess I never thought of it.

"I don't know whether I had met Mrs. Mills before the time I went to her house or not, but I probably had, because I was somewhat intimate with Jack Mills, her husband. I am not sure if I was introduced to Mrs. Mills by Mr. Ault on the occasion I went out with him and found her in bed with a child, or if I had already met her. I don't remember, I can't be sure or have an independent recollection, whether I knew Mrs. Mills at that time or had to be introduced to her by Mr. Ault. I don't remember one way or the other.

"I knew that the person whose acknowledgment I took was actually Mrs. Mills. I don't remember, I don't recall how long I had known her prior to that time. I don't know what my opportunities of acquaintance were with her prior to that time. I say it was Mrs. Mills because I was informed by Jack (her husband) and Mr. Ault that they wanted me to take her acknowledgment, and before I went out there, they said she was sick and I didn't know it

was a little baby there with the lady at that time, and when I got out there I remember distinctly of asking her to let me see the baby. I want to see every baby I get close to.

"I am sure I went out there with Mr. Ault. Jack Mills had been in the office and talked about my taking the acknowledgment. I am sure he is the first one who said he wanted me to go out there and take it and Mr. Ault came and got me.

"I don't remember the details, as to what property or what deed was acknowledged in my presence. I don't think I prepared the deed; I don't recall. I wouldn't swear positively that I did or did not prepare the deed.

"The lady whose acknowledgment I took signed the instrument in my presence; she sat up in bed and signed the instrument. I don't know that it was a two-day-old baby, but it was a mighty little one. I know I took the acknowledgment of the mother of that baby. I knew it from general observation and some few years experience I had in those matters. She was mighty proud of that baby.

"Independent of the instrument handed me, I wouldn't know, I do not recall whether it was a deed or deed of trust I took the acknowledgment to. I won't swear positively to the description of the land or the date; I wouldn't swear it was a field or a lot, or whether it was a deed or deed of trust or what it might have been. I won't say, I wouldn't know with the record gone.

"When I was out there taking the acknowledgment of Winnie Mills she sat up in bed and signed the instrument—she was perfectly conscious. I remember asking her to uncover the baby and let me see him. She uncovered it and talked intelligently to me. So far as that is concerned, the day she signed that instrument on that occasion she was just as sound minded as the Notary Public was."

 The trial judge admitted the certified copy of the deed in evidence, and in his findings of fact found that the deed was not a forgery. If there was sufficient evidence to support his finding, this Court is bound thereby. The evidence of Judge Jesse Wright, when considered as a whole, is sufficient to show that Mrs. Mills signed the deed in his presence and that he took her acknowledgment thereto. Mrs. Mills (now Mrs. Johnson) did not contend that she had been imposed upon by not having

this deed fully explained to her, or by not being examined privily and apart from her husband, or that she was not asked by the notary whether or not she wished to retract her act of signing the deed. Her position is a straight out denial that she signed the deed and, further, that Judge Jesse Wright never at any time during her life appeared in her home, and never took her acknowledgment to any instrument. Judge Jesse Wright testified just as positively that he did appear in her home, did see her sign an instrument, and that she did acknowledge that instrument before him as a notary public. He also testified to facts and circumstances that show the instrument which she signed and acknowledged in his presence was the deed in question. The acknowledgment speaks for itself and shows that it was properly taken. The effect of the affidavit of forgery was to place the burden upon appellees of showing the execution of the deed. This they did by the testimony of Judge Jesse Wright. After the execution was shown, then the certified copy was admissible without the necessity of showing that the original could not be produced other than by the filing of the affidavit above mentioned. Art. 3726, Vernon's Ann.Civ.Stats.; Ward v. Weaver, Tex.Com.App., 34 S.W.2d 1093; Thompson v. Johnson, 24 Tex.Civ.App. 246, 58 S.W. 1030; Texas Osage Co-operative Royalty Pool v. Sullivan, Tex.Civ.App., 93 S.W.2d 566; Chapman v. Kellogg, Tex.Com.App., 252 S.W. 151; Moseley v. Fikes, Tex.Civ. App., 126 S.W.2d 589, affirmed by the Supreme Court, 151 S.W.2d 202; 1 Tex.Jur. p. 601.

Appellants have relied strongly on the case of Moseley v. Fikes, supra. In that case the deed had not been recorded for more than ten years, and there was no proof of execution, as in the case at bar. The Supreme Court granted a writ of error in the Moseley v. Fikes case, and in affirming the judgment of the Court of Civil Appeals, in an opinion delivered February 19, 1941, 151 S.W.2d 202, 205, had the following to say: "This instrument appears to have been duly acknowledged before the County Judge of Upshur County, Texas, and was filed for record April 2, 1931. Plaintiff in the present suit filed an affidavit of forgery attacking this deed, but there is no evidence that such an affidavit was filed in the prior suit. Plaintiff complains of the admission of this deed in evidence in the present case,

but we do not think it necessary to determine whether or not it was admissible. Certainly defendant had a right to rely upon its validity in adjusting the rights of plaintiff in the prior suit."

■ We will next consider the charge of forgery concerning the deed of trust from P. H. Brennan et al., to H. N. Whaley, for the benefit of E. L. Coleman. It was charged that the signatures of Katy E. Moore, Charles A. Moore and W. E. Brennan were forged to this instrument. The trial judge found that such signatures were not forgeries, such finding is supported by sufficient evidence, and is binding upon this Court. There is testimony, pro and con, on the question of these signatures being forgeries, but we are here interested only in the question of whether or not there is sufficient evidence to support the finding of the trial court. F. J. Onzon testified, in effect, that he knew these parties well and that he took their acknowledgments to their signatures to this deed of trust. Onzon was unable to say that he saw these parties sign their names to the instrument, but he was positive that he took their acknowledgments. George J. Lacy, after qualifying as an expert in the science of handwriting, testified that the signatures were the genuine signatures of these parties. The testimony of these two witnesses alone was more than sufficient to support the finding of the trial court to the effect that the signatures were not forgeries. What has been heretofore said in discussing the alleged forgery of Mrs. Mills' name and the authorities there cited are applicable here.

This brings us to a consideration of the last deed charged to be a forgery, which is the alleged deed from Katy E. Moore and husband, C. A. Moore, to E. B. Ault and Nellie E. Ault. It is charged that the signatures of Katy E. Moore and C. A. Moore were forged to this deed. There is the same sufficient evidence to support the trial court's finding that this was not a forged instrument, as there was with reference to the deed of trust above discussed. For the reasons already stated and the authorities above referred to, we sustain the finding of the trial court that this instrument was not a forged instrument.

The above holdings render all other questions immaterial. The judgment of the trial court is affirmed.